THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* L. R. S. & B. REALTY CO., INC., et al., Appellants.

Court of Special Sessions of the City of New York, Appellate Part, First Department, June 24, 1948.

648

*Sidney A. Fine, Benjamin H. Saxen* and *Arthur C. Parker* for appellants.

*Sylvan D. Freeman, Ed Dupree, Hugo V. Prucha* and *Francis X. Riley* for respondent.

DE LUCA, Ch. J. In forty-five separate complaints executed by a representative of the Office of Price Administration, the appellants herein were charged in the Magistrate's Court with an equal number of separate violations of Local Law 34 of 1945, comprising subdivision d of section U41–4.0 of the Administrative Code of the City of New York, in that they, during the months of November and December, 1945, as landlords and the persons entitled to receive the rents for the use and occupancy of premises 80 Strong Street, Bronx, an apartment house building, demanded and received from the various tenants for housing accommodations in said premises, a certain specified sum as rent for each of forty-five separate apartments, in excess of the maximum rent as provided by the Office of Price Administration Rent Regulation for Housing in the New York City Defense-Rental Area. The appellant corporation is the record owner of the said premises; the appellant Rosenblatt, vice-president of the corporate owner; and appellant Korn, the daughter of appellant Rosenblatt, acting in behalf of her mother and the corporation in the transactions involved in this appeal.

The forty-five charges were tried in one trial. All of the appellants were convicted on forty of the charges. Five were dismissed. Sentence was suspended in each case on the appellants Rosenblatt and Korn. The appellant corporation was fined $100 on each conviction or a total of $4,000. All forty judgments are the subject of this one appeal.

The alleged overcharges for rent consist of various sums paid by tenants at or about the time of entering into occupancy for either or both (1) painting, decorating and floor scraping, (2) brokerage fees to real estate brokers in obtaining their apartments under the circumstances hereinafter related.

No claim was made that the landlords established or fixed the rents for the apartments at sums in excess of those charged during the base or freeze period, to wit: January, 1943, and, what is equally as important, the record is devoid of any proof that the appellants received any portion of the moneys paid by the tenants for painting or brokerage. The theory of the prosecution is that these payments for painting and brokerage effected an increase in rent to the tenants and consequently an overcharge by the landlords in violation of Local Law 34 of 1945.

The pertinent part of Local Law 34 upon which this prosecution is based reads as follows:

" d. It shall be unlawful for any person to demand or receive any *rent or other consideration* for any housing or hotel accommodations for which a maximum rent has been prescribed by any regulation or order issued by the office of price administration of the United States of America *in excess of that prescribed by the applicable regulation or order,* or offer, solicit, attempt or agree to do any of the foregoing. (Emphasis ours.)

" e. Penalty. Any person who, by himself or by another, shall violate any of the provisions of this local law, shall be subject to a fine not exceeding the sum of $100, or to imprisonment for a term not to exceed 30 days, or both, for each such violation."

As applicable to the prohibition contained in said local law, the respondent depends upon the following regulations contained in the Rent Regulation for Housing in the New York City Defense-Rental Area (8 Federal Register 13914 *et seq.;* 9 Federal Register 14987 *et seq.*).

The regulations concerning maximum rents:

" Sec. 2. *Prohibition against higher than maximum rents —* (a) *General prohibition.* Regardless of any contract, * * * no person shall demand or receive any rent for or in connection

with the use or occupancy on and after November 1, 1943 of any housing accommodations within the Defense-Rental Area higher than the maximum rents provided by this regulation * * *."

" Sec. 4. *Maximum rents*. Maximum rents (unless and until changed by the Administrator as provided in section 5) shall be: " * * * (b) *Not rented on March 1, 1943 but rented during January or February, 1943*. For housing accommodations not rented on March 1, 1943, but rented at any time during January or February, 1943, the last rent for such accommodations during the two-month period."

The regulation defining rent:

" Sec. 13. *Definitions*. (a) When used in this regulation the term: * * *

"(10) ' Rent ' means the consideration, including any bonus, benefit, or gratuity, demanded or received for or in connection with the use or occupancy of housing accommodations or the transfer of a lease of such accommodations."

The regulation regarding minimum services, etc.: " Sec. 3. *Minimum services, furniture, furnishings and equipment*. Except as set forth in section 5 (b), every landlord shall, as a minimum, provide with housing accommodations the same essential services, furniture, furnishings, and equipment as those provided on the date determining the maximum rent * * *."

The regulation on evasion: " Sec. 9. *Evasion* — (a) *General*. The maximum rents and other requirements provided in this regulation shall not be evaded, either directly or indirectly, in connection with the renting or leasing or the transfer of a lease of housing accommodations, by way of absolute or conditional sale, sale with purchase money or other form of mortgage, or sale with option to repurchase, or *by modification of the practices relating to payment of commissions* or other charges or by *modification of the services furnished* with housing accommodations, or by tying agreement, or otherwise." (Emphasis ours.)

On January 25, 1943, the United States Navy took possession of the premises, 80 Strong Street, in condemnation proceedings for purposes connected with the prosecution of the late war. Thereafter these proceedings were withdrawn when the parties voluntarily entered into an agreement in the form of a lease. Such use and occupancy were duly terminated as of November 28, 1945, although physical possession and control of the premises were surrendered and delivered to the owner as of October 24, 1945.

In the early part of October, 1945, before proceeding to rent the fifty-nine apartments in the premises, the appellant Korn accompanied by an attorney representing the corporate appellant and a Mrs. Moran, real estate saleswoman, consulted a Mr. Seymour, Chief Legal Officer of the Rent Division of the Office of Price Administration in Bronx County. A second conference was had by these same persons around October 15, 1945. The purpose of these conferences was to obtain from responsible Office of Price Administration officials their attitude and position with regard to the matter of painting of apartments and renting them through brokers. All of the participants at these conferences, including Mr. Seymour, testified at the trial. The gist of the testimony regarding the matter of painting was that Mr. Seymour informed the conferees that painting was not the subject of a specific regulation but rather an official position taken as an administrative determination or policy; that under OPA rulings a landlord was only required to paint an apartment completely once every three years and the kitchen and bathroom once every eighteen months; that he was not required to scrape floors; that the OPA was concerned only with the date of the last painting and would figure from that point on. Mr. Seymour advised that cracks be replastered and painted to match. Similar advice was given by Mr. Seymour's superior, the Area Rent Attorney.

At the trial it was proved beyond dispute that in February or March, 1945, all of the apartments in the premises, with the exception of one which was being used as a storage room, had been completely painted and plastered where necessary and the floors washed and shellacked by a painting contractor in behalf of real estate agents representing the United States Navy. It is significant that no order was ever issued by the Office of Price Administration requiring painting to be done at the premises, although the Chief of the Processing Section of the Bronx Office inspected the premises in the latter part of the year 1945, for the purpose of instructing the landlord regarding painting that should be done.

Pursuant to the advice received at these conferences, appellant Korn told prospective tenants that she was obliged merely to deliver possession of the apartments in a rentable condition; that she would do a " touch-up " job sufficient to repair cracks and any damage to the walls and ceilings; that she would have the floors washed and in some cases shellacked where needed; that if they desired the whole apartment to be painted, they could do so at their own expense, which in a great many cases

they did. While we can understand the natural desire of tenants to have a freshly painted apartment we hold in the situation presented by the facts herein and under the Housing Regulation and the administrative policy rulings of the OPA it was not incumbent upon the landlord to comply with their requests. We conceive its obligation was to deliver the apartments in a livable and rentable condition and that this obligation was fulfilled.

We find no evidence to sustain respondent's contention that the tenants, as a condition to obtaining an apartment, were forced by the landlord to have it completely painted. In some instances tenants took possession of the apartments "as is" without painting them. We are satisfied that those tenants who caused their apartments to be painted at their own expense did so voluntarily. There is evidence too, that the cost of painting took into consideration the cost of the "touch-ups" assumed by the landlord. On the argument of this appeal, respondent's attorney conceded that there would be no violation herein if the landlord had insisted that the tenants take the apartments as they were, with no renovation except the "touch-ups", but that once having permitted the tenants to paint at their own expense a violation ensued. We do not agree with this view that such voluntary action should create an overcharge in rent and result in responsibility under the local law.

The respondent does not urge that the expenditure for painting assumed by the tenants constitutes a "bonus, benefit, or gratuity", demanded or received by the landlord within the meaning of the quoted definition of the term "rent" contained in paragraph (10) of subdivision (a) of section 13 of the regulation but advances the argument that the landlord, by refusing to completely repaint the apartments, failed to provide the same essential services as on the maximum rent date as required by section 3 of the regulation and furthermore was guilty of a "modifying practice" regarding services which constituted an evasion under subdivision (a) of section 9 of the regulation, thereby increasing the rent within the purview of section 2 of the rent regulation. We find no merit to these contentions, for the reasons already stated.

At these conferences in October, 1945, the matter of renting the apartments through real estate brokers was also discussed. The appellant Korn, for good and sufficient reasons which need not be set forth here, desired, if permitted to do so, to effect the rentals through brokers rather than to assume the burden thereof personally. On that point Mr. Seymour told his inter-

viewers that the landlord was privileged to rent the apartments through reputable brokers provided there was more than one broker and he also advised that the brokers were permitted to charge brokerage fees to the tenants. That advice was given pursuant to OPA policy interpretations in connection with renting apartments through brokers, as evidenced by exhibits 51 and 53 introduced at the trial by the respondent and which will be considered later in this opinion. Pursuant to this advice the appellant Korn proceeded to list the apartments for renting with three different brokers including the broker employing Mrs. Moran, the real estate saleswoman who was present at the October conferences. None of these brokers had ever been the managing agent of the building. Two of them, not including Mrs. Moran's employer, verified their right to rent the apartments and collect commissions by communicating directly with the Office of Price Administration. The contention of respondent that Mrs. Moran was in legal contemplation and effect the agent of the landlord is not substantiated by the evidence. Certainly there is no evidence of an intention to create such agency. Many of the tenants who rented apartments through her had been listed in her books as persons seeking apartments long before 80 Strong Street became vacant. The commissions received from the tenants went to her employer who shared the proceeds with her on an agreed percentage basis. No part of these commissions went to the landlord and there was no evidence of collusion between Mrs. Moran or her employer and the landlord.

The fact that Mrs. Moran rented the majority of the apartments came about naturally and by force of circumstances. Her office was in the neighborhood of 80 Strong Street. In the unprecedented rush to obtain these apartments many persons applied at the building and when appellant Korn refused to take their applications and informed them the renting was in the hands of brokers, it was only to be expected that they would soon find their way to Mrs. Moran's office. We are satisfied that there has been substantial compliance with the advice and instructions given by the local OPA Chief Attorney Seymour.

As in the case of the painting, respondent does not urge that the payment of broker's commissions by the tenants constitutes a " bonus, benefit, or gratuity " demanded or received by the landlord within the definition of the term rent contained in the regulations. Respondent insists that the payment of commissions by the tenants constitutes an evasion under subdivision

(a) of section 9 of the regulation '' by modification of the practices relating to payment of commissions '' and that the rent was increased thereby beyond the maximum permitted. The regulation contains no other reference to the matter of brokerage commissions. What is contained in subdivision (a) of section 9 is at least subject to the charge of being vague and indefinite.

During October and November, 1945, and for a long time before and since, apartments in the New York Defense-Rental Area have been very scarce. The demand for them was very great so that landlords procured tenants readily and were under no necessity to employ and pay managing agents to obtain rentals. We do not apprehend that the rent regulation intended to fix the practice regarding payment of commissions so as to make them payable at all times and under all conditions by the landlord and to prevent the operation of principles of economic necessity and law. The Office of Price Administration itself recognized this change in the real estate market and by a series of interpretations sought to clarify the situation and explain what practices it deemed permissible.

At the trial respondent introduced the various exhibits in evidence embodying these interpretations. The letters dated September 27, 1944, and June 8, 1945, exhibits 51 and 53 respectively, constituted in effect promulgation by the chief attorney of the New York City Defense-Rental Area of the opinion of the Office of Price Administration in that area at least, that apartment brokers who were not managing agents for a particular property or agents of the landlord were not prevented by the rent regulation from charging tenants legal commissions for the services they gave, and that an individual broker who was not connected directly or indirectly with the ownership of the landlord's property might charge a commission to the prospective tenant assuming that he was not acting in collusion with the landlord. The advice given by Mr. Seymour to the conferees in October, 1945, was in accordance with the interpretations contained in these letters and it was while these interpretations were still the policy of the Office of Price Administration in the New York Area that the apartments at 80 Strong Street were rented. For the first time, a change of interpretation was made by the Regional Rent Attorney in a letter dated December 20, 1945, to the vice-chairman of the Metropolitan Fair Rent Committee. This letter recognized that while under the conditions then existing no owner needed the services of an outside broker in renting his premises, nevertheless the point was made

that a landlord who listed apartments with a broker, in his opinion designated the broker as the landlord's agent even though the broker had nothing to do with the ownership or management, and that the payment of commissions constituted the payment of rent. In the matter of these interpretations we do not consider the opinions expressed in the minutes of the meeting, dated October 30, 1945, of the New York District Rent Compliance Enforcement Committee because this was an inter-office interpretation and was not communicated to any member of the public as in the case of the letters referred to. At another meeting held on April 2, 1946, of one of the committees of the Office of Price Administration the concept was developed of a bona fide " finder " of apartments. It was then thought that only such finders could properly collect commissions from tenants.

These shifting and developing interpretations serve to emphasize the uncertainty and confusion that existed in regard to the matter of commissions. It seems that the court below applied the interpretations contained in the letter dated December 20, 1945, and in the minutes of April 2, 1946, to the facts in this case. We deem the letters of May 27, 1944, and June 8, 1945, as the more appropriate ones to guide us in the determination of the issues involved herein. Interpretations by an agency which promulgates regulations and seeks to enforce them are given great weight and respect by the courts. They do not deserve any less consideration when they are favorable to a defendant. Strangely enough, the court below while it admitted in evidence the documents enumerated above at the instance of the respondent, struck from the record all the testimony of the conferences with the chief rental attorney on the ground that they were concerned with interpretations of maximum rent regulations under the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 901 *et seq.*) and as such did not constitute interpretations regarded as " official " by the OPA because not in writing, as prescribed by Revised Procedural Regulation No. 3 (9 Federal Register 10484, §§ 1300.243–1300.245).

While the courts, in civil cases under the Emergency Price Control Act instituted by or against the Price Administrator, have in reported instances given legal effect to this provision of the revised procedural regulation, nevertheless evidence of " unofficial " interpretations has always been admitted and considered by the court. (*Wells Lamont Corporation* v. *Bowles,*

149 F. 2d 364; *Bowles* v. *Indianapolis Glove Co.,* 150 F. 2d 597; *Schreffler* v. *Bowles,* 153 F. 2d 1; *Bowles* v. *Hansen Packing Co.,* 64 F. Supp. 131.) In the last cited case, an action for treble damages, the court awarded judgment merely for the amount of the overcharge and refused to penalize the defendant in treble damages where he had been previously informed by the Office of Price Administration in a manner contrary to the provisions of the revised procedural regulation that there was no ceiling price on the articles involved.

In our opinion, the appellants should not have been deprived of the benefit of this testimony regarding the conferences with the chief rental attorney offered in aid of the defense in a prosecution of this kind in a criminal court. The element of good faith is an important consideration in reaching a determination herein.

Although the offense described in Local Law 34 is not a crime as defined by the Penal Law, it is nevertheless criminal in nature. In criminal prosecutions, evidence has been received in behalf of the defense which would be inadmissible in a civil case. (*People* v. *Barringer,* 76 Hun 330; *People* v. *Walker,* 85 App. Div. 556, 560, affd. 178 N. Y. 563; see, also, *People* v. *Tait,* 234 App. Div. 433, affd. 259 N. Y. 599; *Sims* v. *Sims,* 75 N. Y. 466; *People* v. *Rodawald,* 177 N. Y. 408, 425.) The provisions of the revised procedural regulation do not require the exclusion of the evidence of the October conferences and such exclusion was error.

One other observation should be made. The language of the local law makes it unlawful '' to demand or receive any rent or other consideration * * * in excess of that prescribed by the applicable regulation or order '' of the Office of Price Administration. These expressions acquire meaning and validity in a statute, criminal in nature, if it can be held that they refer to regulations which are clearly within the language used. The appellants herein neither demanded nor received excess rent or other consideration in the sense contemplated by the language of sections 2 and 4 and paragraph (10) of subdivision (a) of section 13 of the regulation. The respondent practically concedes this by failure to urge such a view. In view of our holding with regard to the obligation of the landlord in the matter of painting it is unnecessary to discuss this branch of the case in connection with the point about to be made with regard to brokerage commissions although similar reasoning would apply. In the case of brokerage commissions the provisions of subdivi-

sion (a) of section 9 of the regulation are invoked by claiming there has been a " modifying practice " with regard to commissions which allegedly has effected an increase in rent. Support for this claim is not based upon any clear and precise provision contained in the regulation itself but by applying policy interpretations — indeed, in our view, irrelevant interpretations — of the Office of Price Administration. It is sought to expand the meaning of the local law to embrace alleged violations arising from interpretations of a regulation which itself is not beyond all doubt included within the local law and which, at least in the absence of collusion between the landlord and brokers, does not have a direct relationship to the matter of rent. Even where a prosecution is based upon the regulation itself a conviction should rest upon the command of the language of the regulation and not upon an interpretation reached by the use of policy judgments established by the Office of Price Administration. (*Kraus & Bros.* v. *United States,* 327 U. S. 614.) Whatever may be the responsibility of the appellants herein under the Federal Emergency Price Control Act (*supra*) or the New York State War Emergency Act (L. 1942, ch. 445, as amd.) on the facts in this case, we do not believe that the responsibility lies in an action in a criminal court under the provisions of the Administrative Code.

We have read the extremely voluminous record in this case and examined the numerous authorities cited by both parties. The many other points raised in the briefs submitted have also been carefully considered, but in view of what we have said we do not deem it necessary to discuss them.

Accordingly, for the reasons above stated, the judgments are reversed, complaints dismissed and fines remitted.

FLOOD and PERLMAN, JJ., concur.

Judgments reversed, etc.