BRONX SQUARE REALTY CORP., Landlord, *v.* " JOHN " WURMAN et al., Tenants.

Municipal Court of the City of New York, Borough of The Bronx, April 9, 1949.

*Isidore Nathanson* for landlord.

*David L. Minkoff* and *William Messing* for tenants.

Loreto, J. This summary proceeding has been instituted for the nonpayment of the rent due for the month of March, 1949, for the tenant's apartment. Similar proceedings were brought by this landlord against forty-eight other tenants in the same and adjacent buildings, known as "the cooperative apartments", in The Bronx, formerly owned by the Workers Colony Corporation. By stipulation, the parties agreed to have these proceedings tried together with separate final orders to be entered in each of them.

The answers of the tenants are similar. In addition to a general denial, they interpose two separate defenses. The first defense alleges that the rental value of the premises is in the sum of $5 less than claimed by the landlord because of a diminution of services and equipment furnished to the tenant by the landlord as compared with the services and equipment furnished

on March 7, 1943; and that the said diminution is in contravention to the Housing and Rent Act of 1947, as amended (U. S. Code, tit. 50, Appendix, § 1881 *et seq.*), and the regulations pertaining thereto. The second separate defense alleges violations constituting a constructive eviction.

No violations having been proved, the second defense was dismissed during the trial.

The first defense presents a vexing legal problem, often raised in these cases, but not uniformily decided. For that reason, this court will attempt to review the authorities on the subject.

In support of the first defense, the tenants offered proof to the effect that on the rent freeze date and prior thereto they were furnished by the landlord the following services not since nor presently furnished: one policeman who patrolled the grounds; one director who supervised cultural and recreational activities for the youth and adults; the assistance of the office personnel of the landlord in receiving parcels for the tenants; the frequent painting of public corridors; the painting of apartments, scraping of floors, supplying new shower curtains, toilet seats and the spraying of frigidaires every two years; the general repair of sidewalks every year; the hiring of additional help for snow removal when required; the furnishing of adequate heat for the apartments at all times between five o'clock in the morning until eleven o'clock at night; and dumbwaiter garbage collection six days each week.

The landlord denies that it is chargeable with a diminution of any substantial services, and offered proof, affecting the credibility and motive of these tenants, showing that immediately upon the issuance of an order by the rent control office increasing certain rents, by concerted action 700 tenants of the total 728 tenants in these apartments refused to pay rent, and also that heretofore in certain instances these tenants applied to that office for a reduction in rent because of failure to paint, to supply shades, toilet seats, etc. And, in addition, the landlord contends that the tenants may not apply to a local court to have rents adjusted under the rent statute and its regulations. The landlord argues that the only agency vested with power to entertain and pass upon such applications for the revision of rents is the local rent control administrator.

The tenants, on the other hand, urge that the local courts may concurrently with and independent of the rent control office determine to what extent services and facilities have been

reduced and award reductions in rent accordingly. The only authority in support of this position their able trial counsel has cited is the case of *Robb* v. *Cinema Francais, Inc.* (194 Misc. 987) decided by Mr. Justice WALTER, on January 17, 1949, in a Special Term of the New York Supreme Court. In that case the tenants sued in equity for an injunction to compel the landlord to restore certain essential services, principally nonautomatic elevator service, night doorman, resident superintendent, etc., and the tenants also sought damages for a diminution in services. Justice WALTER held, in part, that the court may determine the amount of rent which is the legally collectible rent by reason of a reduction of services.

The following are the pertinent provisions of the rent regulation issued July 1, 1947, under the Housing and Rent Act of 1947.

" Sec. 2. *Prohibition against higher than maximum rents* — (a) *General prohibition.* Regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, no person shall offer, demand or receive any rent for or in connection with the use or occupancy on and after the effective date of this regulation of any housing accommodations within the Defense-Rental Area higher than the maximum rents provided by this regulation; and no person shall offer, solicit, attempt, or agree to do any of the foregoing. A reduction in the minimum space, services, furniture, furnishings or equipment required under section 3 of this regulation shall constitute an acceptance of rent higher than the maximum rent."

" Sec. 4. *Maximum rents* — (a) *Maximum rents in effect on June 30, 1947.* The maximum rent for any housing accommodation under this regulation (unless and until changed by the Expediter as provided in section 5) shall be the maximum rent which was in effect on June 30, 1947, as established under the Emergency Price Control Act of 1942, as amended, and the applicable rent regulation issued thereunder, except as otherwise provided in this section."

" Sec. 5. * * * (c) *Grounds for decrease of maximum rent.* The Expediter at any time, on his own initiative or on application of the tenant, may order a decrease of the maximum rent otherwise allowable only on the grounds that: * * * (2) *Substantial deterioration.* There has been a substantial deterioration of the housing accommodations other than ordinary wear and tear since the date or order determining its maximum rent.

"(3) *Decreases in space, services, furniture, furnishings or equipment.* There has been a decrease in the minimum services,

furniture, furnishings or equipment required by section 3 since the date or order determining the maximum rent or a substantial decrease in the living space since June 30, 1947.''

The defense refers to the rent act and the regulation of 1947. Insofar as applicable the rent act of 1948 is the same. Likewise, the regulations issued July 1, 1948, are the same as those quoted except for the addition of the words '' but before April 1, 1948 '' at the end of paragraph (3) of subdivision (c) of section 5 quoted above.

Although this court would be inclined to hold it may determine the question of rental reduction due to diminution in services, it is constrained by the preponderance of the recent, reported authorities on the point to hold otherwise. In *Penner* v. *Geller* (193 Misc. 821) the trial court, finding that the landlord deprived the tenant of garage space, granted to the tenant an allowance on his counterclaim for this decrease in services. The Appellate Term, Second Department, in its *Per Curiam* opinion reversed and dismissed the counterclaim stating (p. 822): '' Where there is a decrease in the minimum services to which the tenant is entitled, his remedy is by appropriate application to the expediter under paragraph (3) of subdivision (b) and paragraph (3) of subdivision (c) of section 5 of the rent regulation for a corresponding reduction of the maximum rent.''

And in *G. M. G. Realty Co.* v. *Spring* (191 Misc. 945, 946) the same court stated: '' The power to fix the rents was vested in him [referring to the rent director] and not in the courts.'' (See, also, *Cullom* v. *Blair,* 66 N. Y. S. 2d 51 [App. Term, 1st Dept.], and *Jerome* v. *Yudt,* 186 Misc. 408, 410 [App. Term, 1st Dept.].)

Moreover, it is doubtful whether on this record in the absence of violations, the court may conclude that the landlord's failure to paint constitutes an exaction of an over-ceiling rent based on its failure to provide an essential service (*People* v. *L. R. S. & B. Realty Co.,* 192 Misc. 646). And it would be difficult to find that some of the items complained of, such as the absence of a recreational and educational supervisor and the failure to repair sidewalks as regularly as desired by the tenants, constitute a diminution of '' services '', '' furnishings '', etc., within the contemplation of the regulation. The rent regulation under section 1, entitled '' Definitions and scope of this regulation '', states: '' ' Services ' includes repairs, decorating and maintenance, the furnishing of light, heat, hot and cold water, telephone, elevator service, window shades, and storage, kitchen,

bath, and laundry facilities and privileges, maid service, linen service, janitor service, the removal of refuse and any other privilege or facility connected with the use or occupancy of housing accommodations."

And section 3 of this regulation provides: " *Minimum space, services, furniture, furnishings, and equipment.* Except as set forth in section 5 (b) every landlord shall, as a minimum, provide with housing accommodations the same living space as provided June 30, 1947, or on the date he first rented on or after July 1, 1947, and the same *essential* services, furniture, furnishings, and equipment as those he was required to provide on June 30, 1947, in accordance with the rent regulation for housing, issued pursuant to the Emergency Price Control Act of 1942, as amended, or those he provided on the date he first rented on or after July 1, 1947, and as to *other* services, furniture, furnishings and equipment not *substantially* less than those he was required to provide on June 30, 1947, or actually provided on the date of first renting on or after July 1, 1947." (Italics by the court.)

Only services of the same general nature as those enumerated in the regulation may be deemed to be included (*People* v. *Gottesman,* 272 App. Div. 1066). For instance, the omission of the policeman is comparable to the landlord's failure to furnish door service, for which the court refused to grant a reduction in rent (*Lenox Hill Apts.* v. *Goldstein,* 182 Misc. 605; *Lenox Hill Apts.* v. *Coogan,* 52 N. Y. S. 2d 40).

The tenants' attorney further urges that the aggregate of the conditions complained of constitutes under the first defense a constructive eviction. There is no merit to this contention. The court doubts whether it was seriously advanced. The tenants have remained in possession of the premises. Where constructive eviction is found, the tenant is relieved of the obligation to pay rent. Even where the premises are partially destroyed by fire, there can be no finding of constructive eviction unless the tenant abandons the premises (*Plymouth Estate* v. *Keery,* 190 Misc. 819; *Fein* v. *Haskin,* 59 N. Y. S. 2d 887 [App. Term, 1st Dept.]).

Although not pleaded in the defense, the tenants would have the court, irrespective of the rent regulation, award as rent an amount representing the diminished rental value of the premises because of the conditions mentioned. However, under the common law, a reduction of rent may not be directed by the courts based on a diminution of services and facilities (*Davar*

*Holdings* v. *Cohen,* 255 App. Div. 445, affd. 280 N. Y. 828). The Appellate Division in that case stated at pages 447–448 : " Concededly, at common law, and before the enactment of the Multiple Dwelling Law, no duty of painting, of decorating, or repair rested upon the landlord in the absence of an express agreement. * * * If the condition ordered to be remedied rendered the premises uninhabitable, the tenant could have removed and, in an action for rent, defended on the plea of constructive eviction. (*Two Rector Street Corp.* v. *Bein,* 226 App. Div. 73.) On the other hand, if he chose to remain in possession, the court upon proof that the condition amounted to constructive eviction and of deposit by the tenant with the clerk of ' the rent for the month or months then due,' could have stayed summary proceedings for non-payment or an action for rent or rental value ; and if the court required that the rental, pending compliance, be paid into court, payment over to the landlord could have been stayed until compliance with the order (Laws of 1930, chap. 871, *supra*). It is further to be noted that for non-compliance with a proper order, the landlord might be further subjected to a fine or penalty under criminal prosecution. (Multiple Dwelling Law, § 304.) It is the landlord and not the tenant who must satisfy the department that the work has been done properly. This statute providing, as it does, its own penalties, should not, as between landlord and tenant, be further extended in scope. Moreover, it is to be noted that outside of the penalties fixed by the statute itself, the liability of the landlord has been enlarged only to the extent of subjecting him to additional liabilities, not in contract, but in tort, with respect to the tenant and others. (*Cullings* v. *Goetz,* 256 N. Y. 287, 292.)"

And, when the trial court prior to the emergency rent laws awarded a lesser sum as rent than the amount demanded in the landlord's petition because of the disrepair of the apartment, the Appellate Term modified the judgment by increasing the judgment to the amount claimed by the landlord (*Guaranty Trust Co.* v. *Leonard,* 168 Misc. 116). In its brief *Per Curiam* opinion, the court there wrote : " The tenant being required as a holdover under the lease to pay a rental of sixty dollars a month, the trial judge was not authorized to reduce the rental to forty-five dollars a month on the theory that that figure was the fair and reasonable rental of the apartment in its disrepair."

It has been held that the unsanitary conditions of the premises may not be raised as a defense to the landlord's proceeding for

the nonpayment of rent (*Sherman* v. *Ludin*, 79 App. Div. 37).

During the trial, the court reserved decision on various motions made by the landlord to strike out testimony. These motions are now denied.

For the reasons herein mentioned, the first defense pleaded herein is dismissed and a final order and judgment is awarded to the landlord in each proceeding for the amount claimed in the petition with five days' stay of execution of the warrant.