**BOWLES, Price Administrator, v. HANSEN PACKING CO.**

**No. 163.**

District Court, D. Montana, Butte Division.

Jan. 24, 1946.

**132**

Clarence E. Wohl and Edw. C. Alexander, both of Helena, Mont., and Alex Levinski, of Butte, Mont., for plaintiff.

James A. Poore and James A. Poore, Jr., both of Butte, Mont., for defendant.

BROWN, District Judge.

In his complaint the Administrator alleges that the defendant, a slaughterer of animals for the production of meat and engaged in the sale at wholesale of carcasses of animals and various wholesale cuts produced therefrom, between the 15th day of June, 1945, and the 27th day of June, 1945, violated Revised Maximum Price Regulation No. 169, regulating the price of beef carcasses and wholesale cuts thereof, by selling to various persons, named in the complaint, beef and beef wholesale cuts as defined by the regulation at prices totalling $1105.45 in excess of the lawful maximum prices established by the regulation, and prays judgment against the defendant for the sum of $3316.35, together with costs and attorney's fees, being three times the amount of the overcharge so claimed.

The answer admits the sale in the quantities alleged, to the persons alleged, at the prices alleged, and admits the prices charged were in the amount of $1105.45 in excess of the maximum price established by the regulation. Defendant pleads certain facts in its answer as affirmative defenses, setting forth that prior to the purchase of the animals, which it thereafter slaughtered and sold the carcasses, it was advised by the Office of the plaintiff that there was no maximum ceiling price established by the Administrator at which the carcasses should be sold and that relying upon said statement and representation it purchased the live animals, thereafter slaughtered them and sold the carcasses at the price set out in the plaintiff's complaint and therefore alleges that in so doing it (1) did not wilfully, intentionally or knowingly violate any law of the United States or any regulation of the Administrator, and (2) because thereof the Administrator is estopped from claiming any recovery from the defendant.

On the trial of the case it appeared that the controversy arose out of a sale of what was known as 4-H Club cattle. The membership of 4-H Clubs is composed of farm boys and girls, and the Clubs are organized and maintained as an educational feature by the United States Department of Agriculture operating through land grant colleges of the various states, and in this instance the Montana State College at Bozeman, Montana. The purpose of the program is to teach the farm boys and girls, by practical demonstration, the scientific selection, caring for and feeding of livestock. To become a member of the Club the farm boy or girl must earn money sufficient to purchase an animal and to pay for its feed. The animal so purchased becomes that of the boy or girl purchasing it. They are advised in the purchase by County Extension Agents and Regional Directors of the Agricultural College at Bozeman and are further advised by such agents and directors as to the proper feeding and care of the animals. At stated periods a show is held at which the various members of the Clubs exhibit the animals so owned and cared for by them, prizes are awarded and at the conclusion of the show the animals are sold at public auction, the money so received for each animal being turned over to the farm boy or girl as his or her

money. It apparently was the practice of packers, wholesale dealers in meats and others to bid at such auction sales more than the prevailing market price for such livestock for the purpose of rewarding the farm boys and girls for the efforts they had put forth in raising the animals and to encourage them in continued effort.

On June 11, 1945, such a show of 4-H Club cattle was held at Dillon, Montana, under the direction of one J. H. Mikkelson, Regional Director for the area. Mikkelson had notified the defendant as well as others of the show and requested that they be present and participate at the bidding, and in response to such invitation one Lundwall, the cattle buyer for the defendant, was directed by the defendant to ascertain if there was a ceiling price fixed by the plaintiff on such cattle, alive or dressed, and if there was such ceiling price not to attend the sale, but if there was not, to attend the sale and to bid. Prior to holding the sale the Regional Director Mikkelson, being uncertain as to whether there was or was not a ceiling price upon the 4-H cattle, telephoned to the office of the plaintiff at Helena, Montana, and was there connected with one Schoernborn, the District Slaughter Control Officer in that office, and upon inquiry Schoernborn advised the Regional Director that there was no ceiling price upon 4-H Club cattle, alive or dressed. Thereupon and in reliance upon such information, Mikkelson advised Lundwall, the purchaser for the defendant, and other prospective purchasers, that the Office of Price Administration had advised him that there was no ceiling fixed on said cattle, either alive or dressed, and in reliance upon such information the defendant's buyer purchased sixteen head of cattle. In purchasing the cattle the defendant's buyer did not limit his bid to the market price of the cattle, but expected to suffer a loss upon the resale of the beef carcasses, and did suffer a loss to the extent of .0477 cents per pound.

The defendant contends first that it is not liable, for having acted upon the information received from the office of the Administrator that there was no ceiling price in purchasing the cattle the Administrator is now estopped from recovering any sum whatsoever from it, and secondly, that if the Administrator is not estopped, it is not liable for more than the actual amount received by it over the maximum established price, in that its violation of the regulation was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation.

The plaintiff insists the defendant is liable for the full amount of three times the excess received over the maximum price established.

The Administrator, acting for the protection of public rights, is in effect the United States carrying on a governmental function, and the general rule that no estoppel arises by reason of the acts of the officers and agents of the United States applies. United States v. Stewart, 9 Cir., 121 F.2d 705.

The defendant having admitted that it sold beef carcasses and wholesale cuts in violation of the regulation, and overcharged $1105.45 in excess of the maximum price established by the regulation, it seems clear to the Court that the Administrator is entitled to a judgment in the case. The amount of the judgment, however, depends entirely upon whether the facts of the case bring into operation that portion of 50 U.S. C.A.Appendix § 925(e) which provides— "Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation." If the defendant has so proven, the amount of the judgment fixed by statute is the amount of the overcharge in this case. If the defendant has not so proven, the limit of the judgment that could be entered by the Court is not more than three times the amount of the overcharge as contended for by the Administrator. Bowles, Administrator, Office of Price Administration, v. Goebel, D.C., 58 F.Supp. 686, Bowles v. Ammon, et al., D.C., 61 F.Supp. 106, Bowles v. Jung, D.C., 57 F.Supp. 701.

Whether the act of the defendant was or was not wilful or the result of failure to take practicable precautions against the occurrence of the violation is a question of fact. That question cannot be resolved by considering only the act itself, but the act of violation must be viewed in connection with and with reference to all the circumstances under which it was committed, the knowledge or information the defendant had at the time of its commission and the intent and purpose of the defendant in committing the act. The evi-

dence discloses that the defendant for some years had engaged extensively in the business of purchasing live animals, slaughtering them and selling the carcasses and products thereof at wholesale; that in the conduct of its business it was a matter of indifference to the defendant whether it did or did not purchase these particular cattle and would purchase them only if there was no ceiling price established controlling the amount that could be realized upon a sale of the carcasses of the animals; that if it did purchase, it intended to do so at a price in excess of the market price and at a loss to itself in order to further and encourage an educational program carried on by the Department of Agriculture and the Montana State College among the farm boys and girls, and to that degree deviated from the normal course of its business and caused the transaction to be one not wholly commercial. Although it is true that as a matter of law it is not a defense to a violation of the regulation that one did not derive a profit from the violation, nevertheless it. appears to the Court that the Court might consider the act was done without the intent of deriving profit, as an element in considering whether the act was done wilfully or not within the meaning and intent of the statute. Further, the evidence establishes that the defendant, in making the bid, did so upon the representation of the Office of Price Administration that there was no ceiling price fixed at which the carcasses of the animals could be resold. It would seem thus that the defendant has borne the burden of establishing that its violation of the regulation was not wilful nor the result of failure to take practicable precautions against the occurrence of the violation, that it was innocent and honest. It would seem that any citizen, having a doubt as to whether there was or was not a regulation in existence or whether or not there was a ceiling price fixed for a certain commodity, would feel that the practicable precaution to take would be to consult the Office of Price Administration on the subject, to assume that if the Office of Price Administration advised, its advice was correct and act in accordance therewith.

■■■ The Administrator relies upon his procedural regulation No. 1, concerning interpretations of the regulation. This procedural regulation sets forth the steps required to obtain an interpretation, the manner of interpreting and limits the right of interpreting it to the Price Administrator, the General Counsel, any associate or assistant General Counsel, any Regional Attorney, any Regional Price Attorney, any District Price Attorney, any Division Counsel to a Price Division or Chief Counsel to a Price Branch of the Office of Price Administration, and provides that only an interpretation obtained by following the regulations is to be deemed official, and that action taken in reliance upon an official interpretation shall be considered action in good faith. The Administrator argues that as this regulation was not followed by the defendant, as a matter of law, the violation of the regulation by the defendant was wilful and the result of failure to take practicable precautions against the occurrence of the violation. In other words, the position of the Administrator is that one can only show that a violation was not wilful nor the result of failure to take practicable precautions against its occurrence by showing that before committing the violation he had complied with procedural regulation No. 1 and obtained an official interpretation. This argument cannot be sustained by the Court. Had the defendant followed procedural regulation No. 1, and received an official interpretation that there was no ceiling price upon the carcasses of these animals, then there would have been no violation in selling them at the price at which the defendant sold them. There must be a violation established before the question of wilfulness or failure to take practicable precautions can enter into the case at all. Where Congress, in the Act, left the question of wilfulness and failure to take practicable precautions as a question of fact to be determined by the Court from all the evidence submitted in each particular case, it could not be argued that the Administrator could by regulation say that the question of wilfulness or failure to take practicable precautions was to be determined entirely by whether a defendant did or did not request and receive an official interpretation of the regulation, and without regard to the other facts in the case. It is true, as the Administrator contends, that he has many hundreds of employees. Nevertheless they are his employees. He can give each of them as little or as much authority as he desires. He has the right to control absolutely their conduct and if he permits them or any of them to give oral advice or information, he is then in no position to penalize a citizen because that citizen acted upon such advice, if it is afterwards determined to be erroneous. Had the defendant here followed proce-

dural regulation No. 1 and gotten the same interpretation of the regulation, it would then have been official and would have protected the defendant against any judgment of any kind in this action in the event the interpretation was erroneous, and the action were brought. The oral advice received is no defense to the defendant here against recovery for the actual amount of the overcharge, but neither can it be used for the purpose of penalizing the defendant because it accepted it as correct, and in good faith acted upon it.

It follows that the plaintiff is entitled to recover a judgment against the defendant for the sum of $1105.45, and its costs and no further or additional sum.

Appropriate Findings of Fact and Conclusions of Law will be filed and exception is granted to each of the parties hereto to such of the Findings of Fact and Conclusions of Law as may be adverse to either of them, and a judgment in accordance with the Findings of Fact and Conclusions of Law will be presented and submitted to the Court.