ISIDORO INFANTE, Plaintiff and Appellee, *v.* BOARD OF MEDICAL EXAMINERS OF PUERTO RICO, Defendant and Appellant.

No. 12202. Decided December 27, 1961.

*J. B. Fernández Badillo, Secretary of Justice, Arturo Estrella* and *Jorge Ruiz Rivera, Assistant Secretaries of Justice,* for appellant. *Francisco Torres Aguiar* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief **Judge** of Division, Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Doctor Isidoro Infante obtained a physician-surgeon diploma issued in 1928 by "The Kansas City University of Physicians and Surgeons" of Kansas City, Missouri. In February 1929 he applied to the Board of Medical Examiners of Puerto Rico for admission to examination. His application was denied and he filed a petition of mandamus against the Board. The question to decide in this petition was whether the Act of 1903, that of 1923 or that of 1928 were applicable to Dr. Infante. This Court decided against it. *Infante* v. *Board of Medical Examiners, etc.*, 43 P.R.R. 311 (1932). Upon deciding that the law applicable was that of 1928, this Court stated, at page 316:

"In the last analysis, this matter lacks practical importance because, even though the Act of 1903 and its amendments of 1906 and 1911 were applicable to the appellant, the fact would always remain that under those statutes the diploma must be issued by a university or college 'in good standing,' and we have seen that the university from which the appellant is a graduate lacks that qualification, as it is classified under letter "C", which is the lowest..." [1]

By Act No. 26 of April 10, 1942 the Legislature of Puerto Rico authorized the Board of Medical Examiners to issue provisional licenses to foreign physicians graduated from recognized Universities, upon compliance with a specific requirement to practice their profession in the municipal public charities. On that same year 1942 Doctor Infante applied for admission to examination and was admitted for the first time. Likewise he took the examinations given in 1943, 1944, 1945, and 1946 with various results. The admission card read thus:

---

[1] The colleges or institutions classified under "C" were not recognized as having a good standing, either by the American Medical Association or by most of the states of the Union. *Virella* v. *Carreras et al.*, 22 P.R.R. 722.

"Having complied with all the legal requirements, this Board has agreed to admit you to revalidation examinations and to that effect sends you this admission card thereto."

The record is not clear as to whether Doctor Infante was admitted to examination under Act No. 26 of 1942 or the basic Act of 1931.[2] The fact is that the Board of Medical Examiners, erroneously interpreting the law, offered some so-called special examinations to those who so requested under Act No. 26 of 1942.[3] Those were the examinations taken by Doctor Infante.

Said Act No. 26 of 1942 was repealed by Act No. 383 of April 22, 1946 (Sess. Laws, p. 1036). Based on the repeal of the Act of 1942 the Board refused to issue the provisional license requested by Doctor Infante. He then appealed to the courts with a petition for mandamus requesting that the Board be ordered to issue to him a permanent license of physician and surgeon. The Superior Court denied the petition for mandamus and on appeal we affirmed that judgment. Per Curiam, Case No. 11, 142, decided on September 1, 1955. We then stated:

"2. That it is not possible to conclude by virtue of that evidence that in 1945–1946 petitioner approved each and every subject except one, on which he was examined in said years, and that the general average he obtained in said examinations was more than 75 per cent, for which reason his complaint is dismissed.

"3. That it is unnecessary to determine whether or not by virtue of the notice served by the defendant Board of Examiners on the petitioner, indicating that he had complied with all the requirements of law, the Kansas City University of Physicians and Surgeons of Kansas City, Missouri, may be considered a University of good standing, whether it was an *ultra vires* [*sic*] act or whether the question constitutes res judicata;..."

---

[2] Act No. 22 of April 22, 1931.

[3] See *Alonso* v. *Board of Medical Examiners*, 74 P.R.R. 148.

That case having been decided, Dr. Infante again applied to the Board of Medical Examiners for admission to revalidation examinations. His application having been denied, he filed another petition for mandamus against the Board of Examiners requesting that it be ordered to admit him to examinations. This time the Superior Court granted the mandamus on the ground that the card of admission to examinations issued to petitioner in 1942 was equivalent to recognition, by the Board of Medical Examiners, of the Kansas City University of Physicians and Surgeons, and that the present Board of Medical Examiners was precluded from denying said recognition.

Respondent-appellant charges the Superior Court with the following single error:

"The trial court erred in stating that the conduct of the former members of the Board of Medical Examiners of Puerto Rico granting the examinations to the plaintiff, now precludes its new members from denying said gentleman another opportunity to revalidate his title in Puerto Rico."

Act No. 22 of April 22, 1931, as amended, provides in its § 14, subdivision 4, that every person wishing to obtain a license to practice the profession of medicine and surgery, or of osteopathy, in the Commonwealth of Puerto Rico, must hold a diploma or title of doctor in medicine and surgery issued by any accredited university of the United States, Puerto Rico, or a foreign country, *registered by the Board of Medical Examiners* and which maintains a high level in subjects appropriate to said profession.

The Board of Medical Examiners never approved an order to register the university which issued the title of physician and surgeon to Doctor Infante.

It may be admitted that Act No. 26 of April 10, 1942 required that foreign physicians wishing to avail themselves of its provisions must be graduated from a university ac-

credited by the Board of Medical Examiners, although its § 3, which covers physicians who have practiced their profession less than five years and had not entered as interns in a hospital in Puerto Rico, only required that the applicant be graduated from a college of recognized reputation without specifying whether the Board should be the one to make such recognition.

From the record it appears quite clearly that the Board admitted Doctor Infante to examination believing, as a matter of fact erroneously, that his case was covered by the emergency act of 1942. In any event he alleges that the admission card to examinations issued to him by the Board and which we have already copied, is equivalent to the recognition and registration of the Kansas City University of Physicians and Surgeons by the Board, which fact estops the present Board of Medical Examiners from denying admission to examinations under the provisions of 1931.

No such estoppel exists in this case. In the first place it is evident that the Board admitted Doctor Infante to examinations under the wrong impression that upon meeting the requirements fixed in the Act of 1942 and that upon passing the so-called special examinations, he would be issued a provisional license to practice his profession of physician and surgeon in the municipal public charities division. The evidence did not show that the Board contemplated, in admitting him to examinations, to issue to him a permanent license as authorized by the Act of 1931. We have already seen that one of the essential requirements of this Act is that the applicant wishing to obtain a license to practice the profession of medicine and surgery in the island should hold a diploma or title of doctor in medicine and surgery issued by any accredited university of the United States, Puerto Rico, or a foreign country, registered by the Board of Medical Examiners and which maintains a high level in subjects appropriate to said profession. The Kansas City University of Physicians and

Surgeons was not an accredited University of the United States [4] since it had the lowest classification of "C". Neither was it registered by the Board of Medical Examiners and much less is there evidence that said University maintained a high level in subjects appropriate to the profession of physician and surgeon. The Board of Medical Examiners had no authority to admit to examinations a graduate from an American university not recognized or registered by said Board and its error, upon admitting Doctor Infante to examinations under the wrong impression that he was covered by the emergency act of 1942, cannot and should not be considered as an act of recognition and registration of the aforesaid University of Kansas City. The Board could not go over the law in order to register a university with the lowest classification. Evidently the Board never intended to recognize and register said university for the purposes of the Act of 1931. The admission of Doctor Infante to revalidation examinations would be in contravention to the provisions of said Act and the Board of Medical Examiners acted lawfully upon denying the application. [5]

■ The practice of medicine and surgery is not a natural right to which any individual is entitled but rather subordinate to the exercise of the police power to preserve and to protect the health of the community. *Alonso* v. *Board of Medical Examiners*, 74 P.R.R. 148; *Infante* v. *Board of Medical Examiners, etc.*, 43 P.R.R. 311; *Cedeño* v. *Dental Board*, 79 P.R.R. 518; *Douglas* v. *Noble*, 261 U.S. 165.

---

[4] Said University ceased to exist long ago.

[5] It has been held in Puerto Rico that a regulation or administrative action contrary to law is void. *Cervecería India* v. *Sec. of the Treasury*, 80 P.R.R. 262, 281; *Descartes* v. *Tax Court; Sucn. de J. Serrallés, Int.*, 71 P.R.R. 440; *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250; *Buscaglia, Treas.* v. *Tax Court*, 67 P.R.R. 53; *Ex parte Irizarry*, 66 P.R.R. 634; *Villa* v. *Industrial Commission*, 65 P.R.R. 527; *People* v. *Bou*, 64 P.R.R. 445; *Colón* v. *Tugwell, Governor*, 65 P.R.R. 869.

In 1913 the Board of Medical Examiners decided that hereafter it would not admit candidates to examination when the diplomas they presented came from colleges classified under the letter "C" by the American Medical Association. The Board refused to admit to examinations Rafael Virella who was graduated from a university which had not been classified at all but which some time after Virella's application was classified under the letter "C" by the American Medical Association. In a petition for mandamus filed by Virella the former District Court upheld the Board's decision notwithstanding the fact that the latter had admitted other applicants graduated from the same University as Virella on the ground that he had not proved the good standing of his college as required by law. The decision was affirmed by this Court. *Virella* v. *Carreras et al.*, 22 P.R.R. 722.

In *Monclova* v. *Board of Pharmacy*, 24 P.R.R. 42, the Board registered Monclova as a candidate for a license as pharmacist and was admitted to examination on subjects of the first course of the said profession and on one of the second but afterwards the Board refused to grade his examination. In the petition for mandamus filed by Monclova this Court stated that the law creating the Board of Pharmacy exacted as a prerequisite in its § 7, that all applicants for diplomas as pharmacists, in order to be enrolled for examination must present diplomas or documents showing that they had passed an examination embracing all the scientific and literary subjects of the course at some high school of the Island or at some reputed similar or analogous institution of the United States or elsewhere, and that since Monclova did not present such diploma or document, the action of the Board of Pharmacy in admitting him to examination was *ultra vires* because the enrollment was null and void. At pages 44, 45 it

was stated: "The provisions of section 7 are mandatory and do not allow the board to deviate therefrom... The fact that Monclova was enrolled for examination after the payment of $10 and actually took the examination, does not favor his pretension because they were acts performed in manifest violation of the law. The Board of Pharmacy acted correctly in refusing to review and grade the examination papers of Monclova and cannot be compelled to do so because it is under no such obligation."

In *Vives* v. *Board of Pharmacy*, 24 P.R.R. 626, Vives was enrolled, concluded his complete studies in pharmacy and successfully passed an examination before the Board in all the subjects required by law. Moreover, he was notified by the President of the Board to call for his license but upon doing so the Board refused to deliver it to him. Vives had not passed his high school courses as required by law and in the petition for mandamus filed by him against the Board it was held that since Vives had never complied with all the requirements exacted by law, the Board could, at any time before issuing the license, correct its own mistakes and base its ultimate decision in strict compliance with the law. It was expressly stated in said case that in cases of this kind, which seriously affect the public interest it is not possible to apply the principle of law that no one may go against his own acts. At page 629 we stated that: "This principle may be applied always to the civil relations existing among citizens, but never to the relations between a citizen and the State when a question of public interest tending to protect the rights of the community is involved." See, also, *Quirós* v. *Board of Pharmacy*, 48 P.R.R. 661.

In *Terry* v. *Little Rock Civil Service Commission*, 225 S.W.2d 13, Terry served thirteen and a half months on the Little Rock Police Force under a special appointment. Then, through error he was certified to be eligible for permanent

appointment as a patrolman. A month later it was ascertained that his promotion was based upon a misconception of the law but he was permitted to continue in service as a special patrolman during four years. Twice, Terry took the Civil Service Commission's examinations and failed. Later when the wartime emergency period ceased he was discharged from his position. It was decided that since he had no Civil Service *status* the Commission was not estopped from discharging him. See, also, *Bourke* v. *Foster*, 343 S.W.2d 208; *Wong Kwok Sui* v. *Boyd*, 285 F.2d 572; *Alexander & Co.* v. *City of Owatonna*, 24 N.W.2d 244; *Sheppard Engineering Co.* v. *United States*, 289 F.2d 681; *Goodwill Industries* v. *L.A. County*, 254 P.2d 877.

 All these decisions follow the general rule that ordinarily estoppel does not arise by reason of the actions of government officers and agents.[6] Although it has been decided that in certain cases the government may be subject to the doctrine of estoppel,[7] we do not believe that given the circumstances concurring herein, said doctrine should be applied to the Board of Medical Examiners. Thus we decide that said Board was not estopped to refuse to admit Doctor Infante to examination.

The judgment rendered by the Superior Court will be reversed and another judgment rendered instead denying the petition for mandamus.

---

[6] See *Federal Crop Insurance Corp.* v. *Merrill*, 332 U.S. 380; *Bowles* v. *Hansen Packing Co.*, 64 F. Supp. 131; 2 Davis, Administrative Law Treatise 504; 1 A.L.R. 2d 341.

[7] 13 The Bus. Lawyer 513; *California State Board of Equalization* v. *Coast Radio Products*, 228 F.2d 520; *Cramer* v. *L. A. County*, 215 P.2d 497; *Baird* v. *City of Fresno*, 217 P.2d 681.