ISIDORO INFANTE, demandante y apelado, *v.* TRIBUNAL EXAMINADOR DE MÉDICOS DE PUERTO RICO, demandado y apelante.

*Número:* 12202 *Resuelto:* 27 de diciembre de 1961

*J. B. Fernández Badillo, Secretario de Justicia, Arturo Estrella, Secretario Auxiliar y Jorge Ruiz Rivera, Procurador Auxiliar,* abogados del apelante; *Francisco Torres Aguiar,* abogado del apelado.

Sala integrada por el Juez Asociado señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El doctor Isidoro Infante obtuvo un diploma de médico cirujano expedido en 1928 por "The Kansas City University of Physicians and Surgeons" de Kansas, Missouri. En febrero de 1929 solicitó de la Junta de Médicos Examinadores de Puerto Rico que se le admitiera a exámenes. Su solicitud fue denegada y entonces interpuso un recurso de mandamus contra la Junta. La cuestión a resolver en dicho recurso era si al doctor Infante se le aplicaba la Ley de 1903, la de 1923 o la de 1928. Este Tribunal le resolvió en contra. *Infante v. Junta de Médicos Exam. de P. R.*, 43 D.P.R. 325. Al decidir que la ley aplicable era la de 1928, este Tribunal dijo a la página 331:

"En último término este asunto carece de importancia práctica porque aun siendo de aplicación al apelante la ley de 1903 y sus enmiendas de 1906 y 1911, siempre resulta que de acuerdo con ellas su título debe ser de universidad o colegio 'bien acreditado' y ya hemos visto que no tiene esa condición la universidad que expidió el título al apelante por estar clasificada con la letra 'C' que es la ínfima. . . . . ." (¹)

Por la Ley Núm. 26 de 10 de abril de 1942, la Legislatura de Puerto Rico autorizó a la Junta de Médicos Examinadores a expedirle licencias provisionales a los médicos extranjeros graduados de universidades reconocidas, previo el cumplimiento de determinado requisito, para ejercer su profesión en la Beneficencia Pública Municipal. En ese mismo año 1942 el doctor Infante solicitó que se admitiera a examen y fue admitido por primera vez. Igualmente tomó los exámenes ofrecidos en 1943, 1944, 1945 y 1946 con diversos resultados. La tarjeta de admisión leía así:

---

(¹) Los colegios o instituciones clasificados bajo letra "C" no estaban reconocidos como bien acreditados por la Asociación Médica Americana, ni por la mayoría de los Estados de la Unión. *Virella v. Carreras, et al.*, 22 D.P.R. 777.

"Habiendo usted cumplido con todos los requisitos exigidos por la ley, este Tribunal ha acordado admitirlo a exámenes de reválida y al efecto se le envía la presente tarjeta de admisión a los mismos."

El récord no es claro en cuanto a si el doctor Infante fue admitido a examen bajo la Ley Núm. 26 de 1942 o la Ley básica de 1931. (²)   Lo cierto es que la Junta Examinadora de Médicos, interpretando erróneamente la ley, ofrecía unos llamados exámenes especiales a los que solicitaban bajo la Ley Núm. 26 de 1942. (³)   Esos fueron los exámenes tomados por el doctor Infante.

La indicada Ley Núm. 26 de 1942 fue derogada por la Ley Núm. 383 de 22 de abril de 1946, Leyes de Puerto Rico, 1946, página 1037.   Basándose en la derogación de la Ley de 1942 la Junta se negó a expedirle una licencia provisional solicitada por el doctor Infante.   Recurrió éste entonces ante los tribunales con una petición de mandamus para que se ordenase a la Junta a expedirle una licencia permanente de médico cirujano.   El Tribunal Superior declaró sin lugar la solicitud de mandamus y en apelación confirmamos esa sentencia.   *Per Curiam*, Caso Núm. 11,242, resuelto en primero de septiembre de 1955.   Dijimos entonces:

"2. Que no es posible concluir a virtud de esa prueba que el peticionario aprobara en 1945–1946 todos y cada una de las materias en que fue sometido a examen en dichos años, menos una, y que el promedio general por él obtenido en dichos exámenes fuera más de 75%, por lo que procede declarar sin lugar su demanda.

"3. Que es innecesario determinar si a virtud de la notificación hecha por el Tribunal Examinador demandado al peticionario, indicándole haber cumplido con todos los requisitos de ley, la Kansas City University of Physicians and Surgeons de Kansas City, Missouri, puede considerarse o no como una universidad acreditada, si ello fue un acto ultra-vires [sic] o si la cuestión constituye cosa juzgada;"

(²) Ley Núm. 22 de 22 de abril de 1931.
(³) Véase *Alonso v. Tribl. Examinador de Médicos*, 74 D.P.R. 158.

Después de resuelto ese caso el Dr. Infante volvió a solicitar del Tribunal Examinador de Médicos se le admitiera a exámenes de reválida. Denegada su solicitud interpuso otro recurso de mandamus contra el Tribunal Examinador para que se le ordenara a admitirlo a exámenes. Esta vez el Tribunal Superior declaró con lugar el mandamus fundándose en que la tarjeta de admisión a exámenes remitida al peticionario en 1942 equivalía a un reconocimiento por parte de la Junta de Médicos Examinadores, de la Kansas City University of Physicians and Surgeons, y que el actual Tribunal Examinador de Médicos estaba impedido de negar tal reconocimiento.

El demandado recurrente imputa al Tribunal Superior la comisión del siguiente único error:

"La Sala sentenciadora erró al declarar que la conducta de los miembros anteriores del Tribunal Examinador de Médicos de Puerto Rico, concediendo exámenes al demandante, impida ahora a sus nuevos miembros, negar a dicho señor otra oportunidad de revalidar su título en Puerto Rico."

La Ley Núm. 22 de 22 de abril de 1931, según enmendada, dispone en su artículo 14, apartado 4, que toda persona que aspire a obtener licencia para ejercer en la Isla de Puerto Rico, la profesión de médico cirujano o la de osteópata, deberá poseer un diploma o título de médico cirujano expedido por alguna Universidad acreditada de los Estados Unidos, Puerto Rico, o país extranjero, *registrada por el Tribunal Examinador de Médicos* y que mantenga un alto nivel en las materias propias de dicha profesión.

La Junta de Médicos Examinadores ni el Tribunal Examinador de Médicos nunca aprobaron una resolución para registrar la universidad que expidió el título de médico cirujano al doctor Infante.

Puede aceptarse que la Ley Núm. 26 de 10 de abril de 1942, exigía que los médicos extranjeros que desearan acogerse a sus disposiciones debían ser graduados de una univer-

sidad reconocida por la Junta de Médicos Examinadores, aunque su sección 3, que cubre a los médicos con menos de cinco años de práctica en la profesión y que no ingresaren como internos en un hospital de Puerto Rico, solamente exigía al aspirante ser graduado de colegios de reputación reconocida sin especificar si ese reconocimiento debía hacerlo la Junta.

Del expediente se desprende con bastante claridad que la Junta admitió a examen al doctor Infante en la creencia, por cierto equivocada, de que su caso estaba cubierto por la ley de emergencia de 1942. De todos modos él alega que la tarjeta de admisión a exámenes que le remitiera la Junta, y que ya hemos transcrito, equivale a un reconocimiento y registro por la Junta de la Kansas City University of Physicians and Surgeons, hecho este que impide al actual Tribunal Examinador de Médicos, a negarle admisión a exámenes bajo las disposiciones de la Ley de 1931.

No existe tal impedimento en este caso. En primer lugar es evidente que la Junta admitió a exámenes al doctor Infante bajo la creencia equivocada de que al reunir los requisitos establecidos en la Ley de 1942 y que de aprobar los llamados exámenes especiales, se le expediría una licencia provisional para ejercer la profesión de médico cirujano en la rama de Beneficencia Pública Municipal. No demostró la prueba que la Junta contemplara, al admitirlo a examen, expedirle una licencia permanente de las autorizadas por la Ley de 1931. Ya hemos visto que esta ley ha exigido como requisito imprescindible que el aspirante a obtener licencia para ejercer en la isla la profesión de médico cirujano debe poseer un diploma o título de médico cirujano expedido por alguna Universidad acreditada de los Estados Unidos, Puerto Rico, o país extranjero, registrada por el Tribunal Examinador de Médicos y que mantenga un alto nivel en las materias propias de dicha profesión. La Kansas City University of Physicians and Surgeons, no era una univer-

sidad acreditada de los Estados Unidos (⁴) pues tenía la calificación ínfima de "C". Tampoco fue registrada por el Tribunal Examinador de Médicos y mucho menos, hay evidencia que dicha Universidad mantuviera un alto nivel en las materias propias de la profesión de médico cirujano. La Junta de Médicos Examinadores no tenía autoridad en ley para admitir a exámenes a un graduado de universidad americana no reconocida ni registrada por dicha Junta y su error, al admitir a exámenes al doctor Infante bajo la creencia equivocada de que a él le cubría la ley de emergencia de 1942, no puede ni debe considerarse como un acto de reconocimiento y registro de la susodicha Universidad de Kansas City. La Junta no podía saltar sobre la ley para registrar una universidad de calificación ínfima. Evidentemente la Junta nunca tuvo el propósito de reconocer y registrar tal universidad a los fines de la ley de 1931. La admisión a exámenes de reválida del doctor Infante sería contraria a las disposiciones de dicha ley y el Tribunal Examinador de Médicos actuó legalmente al denegar su solicitud.(⁵) ▉

La práctica de la medicina y la cirujía, no siendo un derecho natural al que tenga derecho cualquier persona, está subordinada al ejercicio razonable del poder público de preservar y proteger la salud pública. *Alonso* v. *Tribunal*, 74 D.P.R. 158; *Infante* v. *Junta*, 43 D.P.R. 325; *Cedeño* v. *Junta*, 79 D.P.R. 549; *Douglas* v. *Noble*, 261 U.S. 165.

Para el año 1913 la Junta de Médicos Examinadores había resuelto que en lo sucesivo no admitiría candidatos a examen cuando los diplomas que presentaran procedieran de colegios o universidades clasificados con la letra "C" por la

---

(⁴) Dicha Universidad dejó de existir hace tiempo.

(⁵) En Puerto Rico se ha decidido que un reglamento o actuación administrativo en contra de ley es nulo. *Cervecería India* v. *Sec. de Hacienda*, 80 D.P.R. 271, 291; *Descartes* v. *Tribunal*, 71 D.P.R. 471; *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269; *Buscaglia* v. *Tribunal*, 67 D.P.R. 57; *Ex parte Irizarry*, 66 D.P.R. 672; *Villa* v. *Comisión*, 65 D.P.R. 562; *Pueblo* v. *Bou*, 64 D.P.R. 466; *Colón* v. *Tugwell*, 65 D.P.R. 924.

Asociación Médica Americana. La Junta se negó a admitir a exámenes a Rafael Virella quien era graduado de una universidad que no había sido clasificada en absoluto pero que algún tiempo después de la solicitud de Virella fue clasificada bajo la letra "C" por la Asociación Médica Americana. En un recurso de mandamus interpuesto por Virella la entonces Corte de Distrito sostuvo la actuación de la Junta no empece el hecho de que ésta había admitido otros aspirantes graduados de la misma Universidad de Virella fundándose en que éste no había probado el buen crédito de su colegio según lo exigía la ley. La decisión fue confirmada por este Tribunal. *Virella* v. *Carreras*, 22 D.P.R. 777.

En *Monclova* v. *Junta de Farmacia*, 24 D.P.R. 46, la Junta matriculó a Monclova como aspirante al título de farmacéutico y fue admitido a examen de las asignaturas del primer curso de dicha carrera y una de las asignaturas del segundo, pero luego la Junta se negó a calificar sus exámenes. En el recurso de mandamus interpuesto por Monclova dijo este Tribunal que la Ley creando la Junta de Farmacia exigía en su Sección 7, que todo aspirante al título de farmacia presentara para poder ser matriculado, como requisito previo, diploma o documento creditivo de haber aprobado las asignaturas del curso científico o literario de una alta escuela de la isla o de una acreditada institución igual o análoga, ya de los Estados Unidos, ya del extranjero, y que como Monclova no presentó tal diploma o documento, la Junta de Farmacia procedió *ultra vires* a admitirlo a examen, por ser nula la matrícula. A la página 48, se dijo: "Las disposiciones de la Sección 7ª son mandatorias y no permiten a la Junta separarse de ellas . . . El hecho de que Monclova fuera matriculado y admitido a examen previo pago de $10.00, llegando a sufrir el examen, no favorece su pretensión por tratarse de actos ejecutados con infracción manifiesta de la ley. La Junta de Farmacia procedió correctamente al negarse a la calificación de los actos de Monclova

y no puede ser compelida a hacerlo por no estar obligado a ello." █

En *Vives* v. *La Junta de Farmacia*, 24 D.P.R. 669, Vives fue admitido a matrícula, cursó los estudios completos de la carrera de farmacia y fue aprobado por la Junta en todos los cursos exigidos por la ley. Más aún, fue requerido por el Presidente de la Junta para que recogiera su licencia pero cuando fue a recogerla la Junta se negó a entregársela. Vives no había aprobado los cursos de alta escuela según lo exigía la ley y en el recurso de mandamus interpuesto por él contra la Junta se resolvió que como Vives jamás había cumplido con todos los requisitos exigidos por la ley, la Junta podía en cualquier momento antes de expedir la licencia corregir sus propios yerros e inspirar su resolución última en el estricto cumplimiento de la ley. Expresamente se dijo en dicho caso que no era posible, en casos de esta naturaleza, en que el interés público aparece seriamente afectado, aplicar el precepto legal de que nadie puede ir contra sus propios actos. "Este principio de derecho—se dijo a la página 672—puede aplicarse siempre en las relaciones civiles de unos ciudadanos para con otros; pero nunca en las relaciones del ciudadano para con el Estado, cuando hay de por medio una cuestión de interés público que se interpone como barrera, en defensa de los derechos de la colectividad." Véase además, *Quirós* v. *Junta de Farmacia*, 48 D.P.R. 682.

En *Terry* v. *Little Rock Civil Service Commission*, 225 S.W.2d 13, Terry sirvió trece meses y medio en la fuerza policíaca de Little Rock con un nombramiento especial. Luego, por error, fue certificado como elegible para un nombramiento permanente de policía. Un mes después se determinó que su promoción se basaba en una interpretación errónea de la ley pero se le permitió continuar prestando servicios como policía especial por cuatro años. En dos ocasiones Terry tomó los exámenes de la Comisión de Servicio Civil y fracasó. Luego fue separado de su cargo al ter-

minar el período de emergencia de guerra. Se resolvió que como no tenía *status* dentro del Servicio Civil, la Comisión no estaba impedida de separarlo del cargo. Véase además, *Bourke* v. *Foster*, 343 S.W. 2d 208; *Wong Kwok Sui* v. *Boyd*, 285 F.2d 572; *Alexander & Co.* v. *City*, 24 N.W. 2d 244; *Shepard Engineering Co.* v. *United States*, 289 F.2d 681; *Goodwill Industries* v. *L. A. County*, 254 P.2d 877. ▮

Todas estas decisiones siguen la regla general de que de ordinario no surge el *estoppel* por razón de las actuaciones de los funcionarios y agentes gubernamentales. (⁶) Si bien se ha resuelto que en ciertos casos el gobierno puede estar sujeto a la doctrina de *estoppel,* (⁷) no creemos que dada las circunstancias aquí concurrentes deba aplicarse dicha doctrina al Tribunal Examinador de Médicos. En su consecuencia resolvemos que dicho Tribunal no estaba impedido de negarse a admitir a examen al doctor Infante.

*La sentencia dictada por el Tribunal Superior será revocada y se dictará otra declarando sin lugar la petición de mandamus.*

(⁶) Véase *Federal Crop Insurance Corp.* v. *Merrill*, 332 U.S. 380; *Bowles* v. *Hansen Packing Co.*, 64 F. Supp. 131; Davis, *Administrative Law Treatise*, Vol. 2, pág. 504; 1 A.L.R.3d 341.

(⁷) 13 *The Bus Lawyer* 513; *California State Board of Equalization* v. *Coast Radio Products*, 228 F.2d 520; *Cramer* v. *L. A. County*, 215 P.2d 497; *Baird* v. *City of Fresno*, 217 P.2d 681.