# 2003 DTA 123

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE SAN JUAN
PANEL IV**

DR. ROSENDO MARTINEZ PEREZ
Recurrente

v.

TRIBUNAL EXAMINADOR DE MEDICOS
Recurrido

Núm. KLRA-03-00122

San Juan, Puerto Rico, a 31 de julio de 2003

Panel integrado por su Presidente, Juez Gierbolini y
los Jueces Cordero y Rodríguez Muñiz

Cordero, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

El Dr. Rosendo Martínez Pérez (*"Dr. Martínez"*) presentó a tiempo un *"Recurso de Revisión Judicial"* en el que nos solicitó la revocación de la Resolución emitida por el Tribunal Examinador de Médicos (*"Tribunal Examinador"*) el 28 de enero de 2003, notificada el 29 de enero de 2003, en la cual le deniega la certificación en la sub-especialidad de Cirugía de Mano.

### I

El Dr. Martínez cursó estudios de medicina en la Universidad del Caribe, Escuela de Medicina de Cayey, donde obtuvo su título de doctor en medicina el 31 de mayo de 1962. El Tribunal Examinador le expidió el 8 de julio de 1987 licencia autorizando al Dr. Martínez a ejercer la práctica de la medicina y cirugía en Puerto Rico. El 27 de febrero de 1988, el Tribunal Examinador certificó, a tenor con el Reglamento Núm. 3148 de 5 de septiembre de 1984, al Dr. Martínez como especialista en Cirugía Plástica y Reconstructiva. El Dr. Martínez ha trabajado como especialista en esa rama por espacio de quince años y durante dicho término ha practicado la cirugía de mano y es miembro activo del *"American Board of Hand Surgery"*.

Luego, el 2 de octubre de 1991, el Tribunal Examinador crea el Reglamento Núm. 4547 en el que añadió el requisito de un año de residencia para obtener la sub-especialidad en Cirugía de Mano. Posteriormente, el 9 de junio de 1996, aprobó el Reglamento Número 5441 que a su vez regula lo concerniente en cuanto a especialidades y sub-especialidades.

El 20 de octubre de 1998, el Dr. Martínez presentó ante el Tribunal Examinador la Solicitud de Certificación de Especialidad como Especialista en Cirugía de Mano. Sin embargo, el 14 de junio de 1999, el Tribunal Examinador notificó denegatoria de la misma por no tener ante sí evidencia acreditativa de que el Dr.

Martínez hubiera completado el año de residencia en dicha especialidad.

Así las cosas, el Dr. Martínez solicitó reconsideración el 29 de junio de 1999 ante el Tribunal Examinador, el cual no acogió dicha petición.

Posteriormente y por segunda vez, el Dr. Martínez solicitó la Certificación como Especialista en Cirugía de Mano el 24 de enero de 2002. En la misma indicó que es miembro del Board de Especialidad de Cirugía Plástica y Sociedad de Cirugía de Mano y, además, incluyó certificado que acredita que es miembro activo del American Association of Hand Surgery. El Tribunal Examinador emitió el 28 de enero de 2003, notificada el 29 de enero de 2003, Resolución en la cual denegó la certificación de sub-especialidad en cirugía de mano. El Tribunal Examinador señaló como determinaciones de hechos en su Resolución que:

*"No existe evidencia alguna, ni se ha probado al Tribunal Examinador de Médicos, que señale afirmativamente que el Dr. Rosendo Martínez Pérez completara algún programa de residencia acreditado en la sub-especialidad de Cirugía de Mano.*

*El doctor Rosendo Martínez Pérez no ha presentado certificación alguna expedida por la "American Board of Plastic Surgery", ni por la "American Board of Orthopaedic Surgery" ni la "American Board of Surgery" acreditativa de haber sido reconocida como especialista en Cirugía de Mano ni ha presentado evidencia acreditativa a satisfacción del Tribunal Examinador de haber cumplido con los requisitos de preparación académica y entrenamiento que requieren esta Junta de Especialidades miembros del "American Board of Medical Specialties", para dicha Sub-Especialidad en Cirugía de Mano.*

*El Tribunal Examinador de Médicos en Puerto Rico, sólo reconoce a la "American Board of Plastic Surgery", la "American Board of Orthopaedic Surgery" y la "American Board of Surgery", juntas miembros de la "American Board of Medical Specialties" como entidades acreditadoras de la sub-especialidad en Cirugía de Mano."*

Así, el Tribunal Examinador, a base del Reglamento Núm. 5441, denegó la solicitud de certificación para la sub-especialidad en cirugía de mano porque *"el doctor Rosendo Martínez Pérez no ha presentado certificación alguna expedida por la Junta de Especialidades que reconocen dicha especialidad, (La American Board of Plastic Surgery, la "American Board of Orthopaedic Surgery" ni la "American Board of Surgery") de haber sido reconocido como sub-especialista en Cirugía de Mano. Además, no ha presentado evidencia acreditativa a satisfacción del Tribunal Examinador de haber cumplido con los requisitos de preparación académica y entrenamiento que requeriría dichas Juntas, consistente de un (1) año de entrenamiento en un programa acreditado para dicha especialidad. No es suficiente ni sustituye el entrenamiento en un programa de residencia acreditado, la experiencia profesional que pueda haber adquirido el peticionario durante su desempeño como médico."*

El Dr. Martínez acude ante este Tribunal y nos señala que el Tribunal Examinador no sustituyó los requisitos de entrenamiento y residencia en un programa acreditado por la vasta experiencia que posee como profesional practicando la cirugía de mano desde el 1988. A su vez, nos señaló que el Tribunal Examinador no permitió acceso al expediente administrativo hasta el 27 de febrero de 2003 donde se encuentra documentación que acredita la residencia en Cirugía de Mano efectuada por el Dr. Martínez en *"Tulane University"*, así como la certificación de miembro activo expedida por el *"American Board of Hand Surgery"*.

El Dr. Martínez acude ante nos y señala que erró el Tribunal Examinador al: (1) aplicar retrospectivamente el Reglamento Número 5441 rechazando sustituir la evidencia acreditativa de haber completado los requisitos de un año de residencia en dicha especialidad y certificación de estudios expedidas por las Juntas de Especialidades; (2) no reconocer que la residencia que completó el Dr. Martínez durante el 1985-1987 en la

Universidad de Tulane comprende cirugía de mano; 3) culminar el procedimiento de concesión como uno adjudicativo sin concederle una vista evidenciaria ni acceso al expediente administrativo en contravención al debido proceso de ley.

## II

En el ejercicio de su poder regulador, el Estado tiene la facultad para regular y controlar la práctica de las profesiones a fin de proteger la salud y el bienestar público, a la vez que evita el fraude y la incompetencia. También puede prohibir la práctica de una profesión, a menos que primero se obtenga una licencia, permiso o certificado de alguna entidad u oficial examinador. No se trata de poder para privar a un ciudadano de su ocupación u oficio, sino de poder para regular las profesiones por razones del eminente interés público del que están revestidas. *San Miguel Lorenzana v. E.L.A.,* 134 D.P.R. 405, 413 (1993); *Col Ing. Agrim. P.R. v. A.A.A.,* 131 D.P.R. 735, 763 (1992); *Román v. Trib. Exam. de Médicos,* 116 D.P.R. 71, 77 (1985); *Pérez v. Junta Dental,* 116 D.P.R. 218, 233. Tan es así que actualmente no se discute la extensa discreción del Estado y sus juntas examinadoras en la fijación de las normas y los procedimientos que han de regir los procesos de admisión o certificación de personas al ejercicio de la profesión u oficios. *Asoc. Drs. Med. Cui. Salud v. Morales*, 132 D.P.R. 567, 586 (1993).

En casos como el de autos, la revisión del foro judicial, de ordinario, explora y atiende la posibilidad de una violación al interés propietario del peticionario. Luego, procede a evaluar el *"tipo"* de procedimiento requerido. Elementos cardinales como la notificación y el derecho a ser oído no pueden ser obviados. Al reglamentar, el Estado no puede violar el debido proceso de ley. *Román v. Trib. Exam. de Médicos, supra,* a la pág. 81. Así, el Tribunal Supremo ha expresado que en función a la naturaleza flexible y pragmática del debido proceso de ley extensible a este tipo de caso se han ponderado los siguientes factores: (a) el interés privado que pueda resultar afectado por la actuación oficial; (b) el riesgo de una privación errónea debido al procedimiento utilizado, y (c) el interés del Estado, incluyendo su función envuelta y las cargas administrativas y fiscales que conllevaría requerir garantías adicionales o sustitutas. *Id.*

La práctica de la medicina y la cirugía, no siendo un derecho natural al que tenga derecho cualquier persona, está subordinada al ejercicio razonable del poder público de preservar y proteger la salud pública. *Infante v. Tribl. Examinador de Médicos*, 84 D.P.R. 308, 314 (1961).

El Tribunal Examinador, creado en virtud de la Ley Núm. 22 de 22 de abril de 1931, según enmendada, 20 L.P.R.A. § 31, *et seq.*, es el órgano investido por ley con la facultad de autorizar el ejercicio de la profesión de médico-cirujano y certificar las especialidades en el área de la medicina, 20 L.P.R.A. § 34 y 52c. Sus facultades son amplias, delegándosele de este modo la autoridad de implantar la política pública del Estado en cuanto a velar porque se presten servicios de la más alta calidad por parte de la profesión médica, al facultársele para asegurarse de que a tono con los modernos adelantos científicos, los miembros de la profesión médica posean el conocimiento, la preparación, las destrezas y la competencia adecuadas para ejercer dentro de los parámetros de mayor excelencia posibles. Al establecer las normas en cuanto al ejercicio de la profesión de médico-cirujano y de las distintas especialidades, basta con que el Tribunal Examinador justifique la racionalidad de los requisitos adoptados en conformidad con la política pública del Estado.

El Tribunal Supremo ha expresado que al reglamentar el acceso a una profesión, el Estado no puede excluir aspirantes de forma o por motivos que violenten el debido proceso de ley, aunque puede establecer unos requisitos, estos deben estar racionalmente relacionados con el objetivo de garantizar la política pública del Estado referente a los servicios de salud. El Tribunal Supremo resolvió que igual principio aplica en cuanto a las determinaciones del Tribunal Examinador respecto a cuáles áreas de la medicina constituyen parte de la práctica de una especialidad. La facultad del Tribunal Examinador en cuanto a reglamentar la admisión al ejercicio de la profesión y certificar las especialidades, necesariamente implica la facultad para delimitar los campos entre lo que constituye la práctica general de la medicina y aquélla que conforma los lindes de una

especialidad o sub-especialidad. Estos, lejos de ser estáticos, están sujetos a la continua revisión del Tribunal Examinador, conforme a los diversos avances de la ciencia en cada área. El hacer viable esa continua renovación es parte de los objetivos que persigue el Estado mediante el mecanismo de juntas y tribunales examinadores. Véase *Asoc. Drs. Med. Cui. Salud v. Morales, supra*, a las págs. 587-588; 24 L.P.R.A. § 3009.

En definitiva, el legislador puede disponer requisitos diversos en el transcurso del tiempo, sin que ello confiera a una persona un derecho constitucional a que se le apliquen hoy los requisitos de ayer sólo porque está en condiciones de satisfacer aquéllos que anteriormente fueron considerados como suficientes. Son muy pocas las instancias en que la promulgación de una ley al prohibir conducta hasta entonces considerada lícita no afecte a un individuo. Así ocurre cada vez que la ley de una junta examinadora para un profesión, ocupación u oficio, impone requisitos por primera vez que de algún modo afectarían a quienes se dedicaban o pensaban dedicarse a dicha profesión, ocupación u oficio. Aun en presencia de las cláusulas de salvedad (conocidas como *"grandfather clauses"*), la ley generalmente confiere un término para acogerse a sus disposiciones y aquellos que no lo hagan están sujetos a la reglamentación posterior. *Pérez v. Junta Dental, supra*, a las págs. 236-237. En fin, imponer condiciones no priva a los ciudadanos de sus profesiones, sino que las regulan por razones del eminente interés público del cual están revestidas. *Pueblo v. Villafañe, Contreras*, 139 D.P.R. 136, 152 (1995); *Asoc. Drs. Med. Cui. Salud v. Morales, supra*, a la pág. 586. Así, un solicitante como en el caso de autos deberá satisfacer los requisitos vigentes al momento de solicitar una certificación de sub-especialidad.

### III

Ahora bien, el Tribunal Examinador tiene la facultad de crear Reglamentos para llevar a cabo esta facultad reguladora. Las agencias están obligadas a observar estrictamente los reglamentos que ellas mismas promulgan. *García Cabán v. U.P.R.*, 120 D.P.R. 167, 175 (1987). Una vez se ha adoptado una norma, la agencia administrativa debe cumplirla y aplicarla en la manera en que está concebida, sirviendo siempre a los propósitos, objetivos y política pública que le dieron vida. *Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones*, __ D.P.R. __ (2000), **2000 J.T.S. 98**, a la pág. 1266. La agencia debe velar que los requisitos estatutarios establecidos en su reglamento sean cumplidos. *T-JAC v. Caguas Centrum Limited*, __ D.P.R. __ (1999), **99 J.T.S. 60**, a la pág. 884. Una vez una agencia ha promulgado unos reglamentos para facilitar su proceso decisional y limitar el alcance de su discreción, viene obligada a observarlos estrictamente y no queda a su soberana voluntad reconocer o no los derechos que ella misma ha reconocido. *García Cabán v. U.P.R., supra*, a la pág. 175.

El Reglamento Núm. 5441 de 19 de junio de 1996, aplicable al caso de autos, establece en su Capítulo VII *"De las Especialidades, Sub-Especialidades y Práctica de la Acupuntura"* como sub-especialidad la cirugía de mano para la cual se requiere un año de entrenamiento. Además, el Reglamento Núm. 5441 establece lo siguiente:

*"Todo solicitante que interese se le certifique como especialista o sub-especialista deberá cumplir con los siguientes requisitos:*

*a) Ser médico debidamente licenciado para ejercer la medicina y cirugía en Puerto Rico mediante licencia regular expedida por el Tribunal Examinador de Médicos.*

*b) Someter "Solicitud de Certificación de Especialidad" debidamente cumplimentada.*

*c) Someter giro bancario, postal o cheque certificado por la cantidad de $100.00 a nombre del Secretario de Hacienda de Puerto Rico.*

*d) Presentar certificado, en original y copia, expedido por la Junta Nacional de Especialidad acreditativa de que el solicitante es especialista calificado.*

*e) Si el solicitante no ha sido certificado por una Junta Nacional de Especialidad reconocida por el "American Board of Medical Specialities", deberá someter evidencia acreditativa -satisfactoria a juicio del Tribunal Examinador- de haber cumplido con los requisitos de preparación académica y entrenamiento que requiere la Junta Nacional de Especialidad de acuerdo con la especialidad o sub-especialidad para la que solicita certificación.*" (Enfasis suplido.)

De lo antes transcrito, surge claramente que para la certificación de cualquier especialidad si el solicitante no ha sido certificado por alguna Junta Nacional de Especialidad reconocida por el *"American Board of Medical Specialties"*, entonces es que el solicitante deberá someter evidencia acreditativa de haber cumplido con la preparación académica y entrenamiento.

## IV

Según la doctrina establecida por el Tribunal Supremo, las decisiones de los organismos administrativos especializados merecen gran deferencia, presumiéndose su corrección. La revisión judicial, en estos casos, se circunscribe a determinar si la agencia actuó arbitraria, ilegalmente, o de manera tan irrazonable que su actuación constituyó un abuso de discreción; *Municipio de San Juan v. Junta de Calidad Ambiental,* __ D.P.R. __ (1999), **99 J.T.S. 152**, a la pág. 125; *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194, 210 (1975); *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692, 699 (1975). Para convencer al tribunal que la evidencia utilizada por la agencia para formular una determinación de hechos no es sustancial, la parte afectada debe demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada hasta el punto que no pueda ser concluido que la determinación de la agencia fue razonable de acuerdo a la totalidad de la prueba que tuvo ante su consideración. *Hilton Hotels v. Junta de Salario Mínimo,* 74 D.P.R. 670, 686 (1953).

## V

En el caso de autos y de la evidencia presentada, surge que al momento en que el Dr. Martínez finalizó su residencia estaba vigente el Reglamento Núm. 3148 de 5 de septiembre de 1984, el cual no reconocía la Cirugía de Mano como una sub-especialidad, por lo que éste ha venido practicando la cirugía de mano como parte de la especialización de cirugía plástica según era reconocida. No es hasta el 4 de octubre de 1991, bajo el Reglamento Núm. 4547, que el Tribunal Examinador incorporó la Cirugía de Mano como una sub-especialidad requiriendo para ello un año de entrenamiento. Bajo el Reglamento Núm. 4547 no existe una cláusula de salvedad (*"grandfather clause"*) para ser acogida por aquellos médicos que practicaban la cirugía de mano dentro de la especialidad de cirugía plástica. El lenguaje del Reglamento Número 4547 no difiere del utilizado en el Reglamento Número 5441. En síntesis, ambos disponen que el solicitante que interese se le certifique como sub-especialista deberá presentar un certificado expedido por la Junta Nacional de Especialidad acreditativo de que el solicitante es especialista calificado. Si el solicitante no ha sido certificado por alguna Junta Nacional de Especialidad reconocida por el *"American Board of Specialties"*, en el caso ante nos, entiéndase la *"American Board of Plastic Surgery"*, *"American Board of Orthopaedic Surgery"* o la *"American Board of Surgery"*, entonces deberá someter evidencia acreditativa de haber cumplido con los requisitos de preparación académica y entrenamiento.

En el caso de autos, el Tribunal Examinador concluyó que el Dr. Martínez no evidenció ni probó que completó algún programa de residencia acreditado en la sub-especialidad de cirugía de mano. A su vez, señaló el Tribunal Examinador que el Dr. Martínez no presentó certificación alguna expedida por el *"American Board of Plastic Surgery"*, la *"American Board of Orthopaedic Surgery"* o la *"American Board of Surgery"* que le acreditara haber sido reconocido como especialista. En fin, no concedió la certificación solicitada. Sin embargo, surge del expediente administrativo que el Dr. Martínez presentó al Tribunal Examinador evidencia de ser miembro activo de la *"American Association for Hand Surgery"*. Para ser miembro activo de dicha entidad, se requiere que el Dr. Martínez esté certificado por una de las siguientes: (1) *"American Board of Surgery"*, (2) *"American Board of Orthopaedic Surgery"*, y (3) *"American Board of Plastic Surgery"*. El Tribunal

Examinador simplemente no examinó dicho hecho. Según establece el Reglamento Número 5441, si el Dr. Martínez es miembro de alguna de estas organizaciones no es necesaria evidencia acreditativa de su preparación académica. El Dr. Martínez solicitó la celebración de una vista evidenciaria para presentar su posición, pero el Tribunal Examinador, sin más, denegó la misma.

Ciertamente, el Dr. Martínez posee un interés que se puede ver afectado, ya que puede ser privado de parte de la práctica a la que se dedica. El Tribunal Examinador debió conceder al Dr. Martínez la oportunidad de presentar su caso, pero no lo hizo y erró al así actuar. El debido proceso de ley ofrece también protección contra la arbitrariedad administrativa. En el campo de derecho administrativo, la norma del debido proceso de ley no tiene la rigidez que se le reconoce en la esfera penal. Así, el debido proceso de ley reconoce unas garantías mínimas que incluyen una notificación oportuna del procedimiento, derecho a ser oído, a confrontarse con los testigos, a presentar prueba oral y escrita en su favor y a una determinación imparcial basada en el récord administrativo, *Magriz v. Empresas Nativas,* 143 D.P.R. 63, 70 (1997); *López y Otros v. Asoc. de Taxis de Cayey*, 142 D.P.R. 109, 113-114 (1996).

## VI

A la luz de lo anterior, la Resolución emitida por el Tribunal Examinador constituye una determinación judicial en la cual se pasaron por alto las garantías mínimas reconocidas bajo el debido proceso de ley. Se devuelve el caso para que el Tribunal Examinador celebre vista en la cual el Dr. Martínez deberá presentar evidencia acreditativa de ser miembro de una de las siguientes: 1) *"American Board of Surgery".* (2) *"American Board of Orthopaedic Surgery"*, y (3) *"American Board of Plastic Surgery"*, en cuyo, caso a tenor con el Reglamento Núm. 5441, no será necesario que cumpla con el requisito de un año de entrenamiento para la sub-especialidad de cirugía de mano. De lo contrario, deberá someter evidencia acreditativa -satisfactoria a juicio del Tribunal Examinador- de haber cumplido con los requisitos de preparación académica y entrenamiento que requiere la Junta Nacional de Especialidad para Cirugía de Mano.

Lo acuerda y manda este Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General