Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| **OMAR CARRION TORRES**<br><br>Recurrente<br><br>v.<br><br>**LUCAS A. CASTRO; LOS PALITOS SPORT BAR & AGENCIA HIPICA**<br><br>Parte Recurrida Proponente<br><br>**DIVISION DE REVISIONES ADMINISTRATIVAS DE LA OFICINA DE GERENCIA DE PERMISOS DE PUERTO RICO**<br><br>Agencia Recurrida | KLRA202300304 | **Revisión Administrativa** procedente del Departamento de Desarrollo Económico y Comercio Oficina de Gerencia de Permisos OGPe)<br><br>Rev. Núm.: **2023-478852-SDR-011749**<br><br>Núm. De Caso ante **OGPe: 2022-464637-PU-182532**<br><br>Sobre: **Impugnación de Permiso de Uso** |

Panel integrado por su presidente el Juez Hernández Sánchez, la Jueza Álvarez Esnard y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 26 de agosto de 2024.

Comparece ante nos, Omar Carrión Torres, en adelante, Carrión Torres, solicitando que revisemos la *"Resolución de Revisión Administrativa"* emitida por la División de Revisiones Administrativas de la Oficina de Gerencias de Permisos, en adelante, OGPe, en la cual declaró "No Ha Lugar" la *"Solicitud de Revisión Administrativa"* solicitada por Carrión Torres.

---

[1] Véase Orden Administrativa OATA-2023-131 del 14 de julio de 2023, donde se designa al Juez Alberto Luis Pérez Ocasio en sustitución de la juez Grisel M. Santiago Calderón.

Por los fundamentos que expondremos a continuación, *confirmamos el dictamen recurrido.*

## I.

El 13 de junio de 2021, la OGPe, aprobó un *"Permiso Único"*, con la numeración 2021-361939-PU-071219, para operar un "[c]afetín con venta de bebidas alcohólicas al detal, tres (3) máquinas de entretenimiento para adultos, vellonera, mesa de billar y Agencia Hípica" para el negocio conocido como Los Palitos Sports Bar & Agencia Hípica, en adelante, Los Palitos.[2] El 8 de noviembre de 2022, Lucas Castro Badia, en adelante, Castro Badia, presentó otra solicitud de permiso con el mismo uso aprobado por la OGPe en el *"Permiso Único"* emitido el 13 de junio de 2023.[3] Esta segunda solicitud fue aprobada por la OGPe el 30 de enero de 2023, aprobándose un *"Permiso Único"* con la numeración 2022-464637-PU-182532.[4]

En desacuerdo con dicha determinación, el 21 de febrero de 2023, Carrión Torres presentó *"Solicitud de Revisión Administrativa".*[5] Plantearon que la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos, había errado al aprobar el permiso aludido, ya que este estaba relacionado al deporte hípico y Castro Badia no poseía una licencia hípica debidamente expedida.[6] Alegó que el permiso no debía ser aprobado hasta que se obtuviera la licencia hípica para operar las máquinas de juego.[7] Por lo que, solicitó que se dejara sin efecto el mismo.[8]

Por su parte, el 27 de marzo de 2023, Castro Badia presentó *"Solicitud de Desestimación".*[9] Alegó que, el 13 de junio de 2021 la

---

[2] Apéndice del recurso, pág. 85.
[3] *Id.* pág. 1.
[4] *Id.* pág. 92.
[5] *Id.* pág. 72.
[6] *Id.* pág. 74.
[7] *Id.* pág. 75.
[8] *Id.*
[9] *Id.* pág. 80.

OGPe había emitido el *"Permiso Único"* para la operación de Los Palitos y que cualquier parte afectada por la emisión del mismo, tenía un término de veinte (20) días para solicitar la revisión.[10] Añadió que la emisión del permiso del 30 de enero de 2023, era una renovación del permiso anterior, conforme a la sección 3.7.1.4 (m) del Reglamento Conjunto del 2020, Reglamento Núm. 9233 del 2 de diciembre de 2020, la cual establece que las renovaciones no son revisables, ni apelables.[11]

El 28 de marzo de 2023, Carrión Torres presentó *"Moción de Archivo de Solicitud de Permiso Único"*.[12] Planteó que el área donde estaba ubicado el negocio Los Palitos se consideraba como Comercial Liviano o C-L.[13] Alegó que, en el distrito comercial liviano se prohíben los comercios que sean cafetines, barras, entre otros y que del expediente administrativo del negocio Los Palitos surgía que, este contaba con una barra de bebidas embriagantes.[14] Por lo que, procedía decretar el archivo y desestimación de la solicitud de permiso de Castro Badia, por ser ajena a los usos permitidos en el reglamento.[15]

Luego de celebrada la vista administrativa el 28 de marzo de 2023, la División emitió *"Resolución de Revisión Administrativa"* el 22 de mayo de 2023.[16] En síntesis, planteó que el permiso impugnado, fue emitido correctamente.[17] Fundamentó su decisión en que, el permiso en cuestión era el mismo uso que había sido aprobado el 13 de junio de 2021 y que, en ningún caso será requerido la expedición de un nuevo permiso, siempre y cuando el uso autorizado no hubiera sido interrumpido por un período mayor

---

[10] Apéndice del recurso, pág. 81.
[11] *Id.*
[12] *Id.* pág. 26.
[13] *Id.*
[14] *Id.* pág. 27.
[15] *Id.* pág. 29.
[16] *Id.* pág. 1.
[17] *Id.* pág. 15.

de dos (2) años.[18] Sostuvo, que en el caso ante su consideración no habían transcurrido los dos (2) años, ni había variado el uso.[19] Determinando entonces, que no se justificaba revocar la determinación de la OGPe y declarando "No Ha Lugar" la solicitud de revisión administrativa presentada por Carrión Torres.[20]

Aún en desacuerdo, el 21 de junio de 2023, Carrión Torres presentó *"Recurso de Revisión Judicial"* ante nos. Plantea:

**PRIMER ERROR:** ERRÓ LA HONORABLE DIVISIÓN DE REVISIONES ADMINISTRATIVAS DE LA OGPe, COMO ENTE REVISOR DE LA OGPe, AL CONFIRMAR SU DETERMINACIÓN, A PESAR DE LAS INCONGRUENCIAS E INOBSERVANCIAS ESTATUTARIAS Y REGLAMENTARIAS QUE CONTENÍA LA SOLICITUD DEL PERMISO PRESENTADA POR LA PARTE RECURRIDA-PROPONENTE.

**SEGUNDO ERROR:** ERRÓ LA HONORABLE DIVISIÓN DE REVISIONES ADMINISTRATIVAS DE LA OGPe COMO ENTE REVISOR AL TOMAR CONOCIMIENTO ADMINISTRATIVO DE UN PERMISO DE USO PREVIO INVÁLIDO, QUE FUE ARCHIVADO; FUNDAMENTANDO ASÍ SU DETERMINACIÓN FINAL EN UNA NO-CONFORMIDAD LEGAL NO SOLICITADA, INAPLICABLE E INVÁLIDA, LO QUE IMPEDÍA QUE SE CONFIRMASE EL PERMISO DE USO, ANTE LA REALIDAD DE UNA PROHIBICIÓN ESTATUTARIA PARA CAFETINES EN UN DISTRITO COMERCIAL LIVIANO SIN LOS REQUISITOS DE LEY.

**TERCER ERROR:** ERRÓ LA HONORABLE DIVISIÓN DE REVISIONES ADMINISTRATIVAS DE LA OGPe AL CONFIRMAR EL PERMISO ÚNICO EXPEDIDO POR LA OGPe A PESAR DE QUE DESFILÓ PRUEBA DURANTE LA VISTA QUE DEMOSTRÓ QUE LA SOLICITUD DE PERMISO SE AMPARÓ EN INFORMACIÓN FALSA E INCORRECTA Y, MENDAZMENTE, OCULTÓ DE LA AGENCIA LA PROXIMIDAD DE UNA IGLESIA, LA CUAL ESTÁ OPERANTE, AL LOCAL TIPO CAFETÍN, Y CONLLEVA A LA CONSECUENCIA DE QUE DEBA DEJARSE SIN EFECTO EL PERMISO, DEBIDO A LAS FALSAS DECLARACIONES DE LA PARTE PROPONENTE Y BAJO EL PALIO DE LA SECCIÓN

---

[18] Apéndice del recurso, pág. 15.
[19] *Id.*
[20] *Id.*

4.4.1.6 DEL REGLAMENTO CONJUNTO DE 2020, PÁGS. 253-254.

El 26 de junio de 2023, emitimos *"Resolución",* ordenándole a la parte recurrente presentar ante nos la transcripción de la prueba oral en un término de treinta (30) días y concediéndole un término de diez (10) días a la parte recurrida, contados a partir de la presentación de la transcripción, para presentar sus objeciones. El 31 de julio de 2023, Carrión Torres presentó ante nos *"Moción Notificando Transcripción de Prueba Oral"*. A raíz de lo cual, el 14 de agosto de 2023, emitimos *"Resolución"* dando por cumplida la orden y otorgándole a Castro Badia, un término de diez (10) días, para presentar sus objeciones.

El 11 de septiembre de 2023, la OGPe presentó *"Oposición a Revisión Administrativa".* Por su parte, el 24 de octubre de 2023, Castro Badia presentó *"Oposición a Recurso de Revisión Judicial"*.

Con el beneficio de la comparecencia de ambas partes, de la transcripción de la vista y perfeccionado el recurso, procedemos a expresarnos.

**II.**

**A. Revisión Judicial de Agencias Administrativas**

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Simpson y otros v. Junta de Titulares*, 2024 TSPR 64, 213 DPR ___ (2024); *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 2024 TSPR 29, 213 DPR ___ (2024); *Comisión Ciudadanos v. G.P. Real Prop.,* 173 DPR 998, 1015 (2008). De esta forma, se vela por que los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un

remedio frente a las actuaciones arbitrarias de las agencias". Id. En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal". *Simpson y otros v. Junta de Titulares*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 543 (2006); Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, Ley 38-2017, 3 LPRA sec. 9672. La precitada Ley es la que autoriza la revisión judicial de las decisiones de las agencias administrativas. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); LPAUG, supra, secs. 9671-9677.

Ahora bien, es harto conocido en nuestro ordenamiento jurídico, que los tribunales deben brindarles la mayor deferencia posible a las decisiones administrativas, por gozar estas de una presunción de validez proveniente de la experiencia que se le atribuye a las mismas. *Transporte Sonell, LLC v. Junta de Subastas*, 2024 TSPR 82, 214 DPR ___ (2024); *Otero Rivera v. Bella Detail Group, Inc.*, 2024 TSPR 70, 213 DPR___(2024); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud,* supra, pág. 89; *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Mun. de San Juan v. CRIM*, 178 DPR 163, 175 (2010). Al ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero deben examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra; *Otero v. Toyota*, 163 DPR 716, 729 (2005).

Esto es así, toda vez que las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección debido a su vasta experiencia y conocimiento especializado, lo que significa que estas merecen deferencia por parte de los foros judiciales. *Transporte Sonell, LLC v. Junta de Subastas*, supra; *Otero Rivera v. Bella Detail Group, Inc.*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra; *OEG v. Martínez Giraud, supra, pág. 89*; *Super Asphalt v. AFI y otro*, supra, pág. 819; *Graciani Rodríguez v. Garage Isla Verde*, supra, pág. 126; *Rolón Martínez v. Supte. Policía*, supra, pág. 35; *González Segarra v. CFSE,* 188 DPR 252, 276 (2013); *Mun. de San Juan v. CRIM*, supra, pág. 175.

Sin embargo, aunque los tribunales revisores están llamados a conceder deferencia amplia a las determinaciones de las agencias administrativas, tal norma no es absoluta. En otras palabras, no puede imprimírsele un sello de corrección automático bajo el pretexto de deferencia a aquellas determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a Derecho. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra; *Super Asphalt v. AFI y otro*, supra, pág. 819; *Graciani Rodríguez v. Garage Isla Verde*, supra, pág. 126; *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016); *Mun. de San Juan v. CRIM*, supra, pág. 175.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. LPAUG, supra, sec. 9675; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. Id.

En resumen, ante una revisión judicial, el tribunal tomará en consideración lo siguiente: (a) presunción de corrección; (b) especialización del foro administrativo; (c) no sustitución de

criterios; (d) deferencia al foro administrativo; y (e) que la decisión administrativa solo se dejará sin efecto ante una actuación arbitraria, ilegal o irrazonable, o ante determinaciones huérfanas de prueba sustancial del expediente que constituyen un abuso de discreción.

### B. Errores Administrativos

En ocasiones, las agencias administrativas incurren en errores en el ejercicio de sus funciones, que podrían afectar directamente a individuos. Sin embargo, nuestro más Alto Foro ha expresado que éstos no crean un estado de derecho que obligue a una agencia ni impida su corrección y que una parte no puede pretender ampararse en una actuación administrativa incorrecta o ilegal. *Rivera Padilla v. OAT*, 189 DPR 315, 345 (2013); *González v. E.L.A.*, 167 DPR 400, 413 (2006); *Magriz v. Empresas Nativas*, 143 DPR 63, 71 (1997). "Lo contrario implicaría congelar en el tiempo las consecuencias nocivas de actuaciones estatales arbitrarias o erradas." Esta doctrina del error administrativo no aplica de forma automática, sino ante un acto anterior de la agencia que pueda ser caracterizado como ultra vires, incorrecto o ilegal. Íd. *Magriz v. Empresas Nativas*, 143 DPR 63, 71 (1997).

En los casos de *González v. E.L.A.,* supra, *Del Rey v. J.A.C.L.*, 107 DPR 348 (1978), *ELA v. Rivera*, 88 DPR 196, 198–199 (1963), *Infante v. Tribl. Examinador Médicos*, 84 DPR 308 (1961) nuestro Tribunal Supremo atendió varios reclamos administrativos, en los que aplicó la doctrina del error administrativo. En estos casos, el Alto Foro sostuvo las correcciones hechas por diversas agencias, que, como consecuencia, revocaron la libertad bajo supervisión electrónica de varios confinados, la licencia médica de un aspirante, un permiso de construcción y un permiso de uso.

Así, un individuo no puede ampararse en el error de una agencia, para reclamar un derecho que no obtuvo legítimamente. Tampoco puede impedir la concesión de un derecho, basándose en una actuación agencial que nunca procedió o materializó.

## C. Ley para la Reforma del Proceso de Permisos de Puerto Rico.

La Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161 de 1 de diciembre de 2009, 23 LPRA sec. 9011 et seq., en adelante, Ley Núm. 161-2009, rige el marco legal y administrativo relacionado a las solicitudes, evaluaciones, concesiones y denegatorias de permisos de uso y construcción de Puerto Rico. La aprobación de esta ley, creó la OGPe, entidad encargada de la evaluación, concesión y denegatoria de permisos de uso, construcción y desarrollo de terrenos en Puerto Rico. *Horizon Media Corp. v. Junta Revisora*, 191 DPR 228, 236 (2014). En su Artículo 11.1, la Ley Núm. 161-2009, supra, sec. 9021m, creó la División de Revisiones Administrativas, como aquel organismo adscrito a la Oficina de Gerencia de Permisos, que tendrá la función de revisar las actuaciones y determinaciones de la Junta Adjudicativa, la OGPe, los Profesionales Autorizados y los Municipios Autónomos con Jerarquía de la I a la V.

En lo aquí pertinente, la Ley Núm. 161-2009, supra, dispone en su Artículo 9.6, lo siguiente:

> A los fines de esta Ley, los permisos son de naturaleza *in rem.* **En ningún caso se requerirá la expedición de un nuevo permiso, siempre y cuando el uso autorizado, permitido o no conforme legal, continúe siendo de la misma naturaleza y no sea interrumpido por un período mayor de dos (2) años.**
> 23 LPRA sec. 9019e (Énfasis nuestro).

Por otro lado, el Artículo 9.10 de la Ley Núm. 161-2009, supra, sec. 9019i, dispone que se presumirá la corrección y

legalidad de las determinaciones finales y los permisos expedidos por la Oficina de Gerencia de Permisos.

En cuanto al proceso de expedición de los *permisos únicos*, la Ley Núm. 161-2009, supra, sec. 9018c-1, dispone:

Todo edificio existente o nuevo, con usos no residenciales, así como todo negocio nuevo o existente, obtendrá el Permiso Único para iniciar o continuar sus operaciones, el cual incluirá: permiso de uso; certificación de exclusión categórica; certificación para la prevención de incendios; certificación de salud ambiental; licencias sanitarias; y cualquier otro tipo de licencia o autorización aplicable requerida para la operación de la actividad o uso del negocio. [...]

Previo a la renovación de un Permiso Único, se requerirá una inspección por la Oficina de Gerencia de Permisos, Profesional Autorizado o el Municipio Autónomo con Jerarquía de la I a V. El Reglamento Conjunto deberá especificar la magnitud y rigurosidad de dichas inspecciones, con el propósito de garantizar que la actividad está cumpliendo con los requerimientos estatutarios y reglamentarios.

Si en las inspecciones realizadas se identificaran usos o actividades que se están llevando a cabo sin estar autorizadas en el Permiso Único, pero las mismas son permitidas en el distrito de calificación, en términos de uso y parámetros de construcción, se permitirá enmendar el Permiso Único para añadir la autorización a la actividad o uso, siempre y cuando se paguen los cargos y derechos aplicables al año anterior a la renovación como penalidad por llevar a cabo una actividad no incluida en el Permiso Único. Sin embargo, si los usos o actividades llevados a cabo sin estar autorizadas en el Permiso Único no son permitidas por el distrito de calificación en el cual se encuentra la propiedad, el Permiso Único no podrá ser renovado, teniéndose que instar una nueva solicitud.

[...]

El Sistema Unificado de Información enviará notificación al dueño del proyecto y al dueño de la propiedad indicando la fecha de vencimiento del Permiso Único. **La renovación del Permiso Único para edificios existentes o nuevos con usos comerciales o institucionales que estuvo en cumplimiento no será revisable o apelable.** En el caso de las enmiendas sólo se podrá solicitar revisión a la acción o

actividad contemplada en la enmienda y no a la que ya existía.

(Énfasis nuestro).

### D. Reglamento Conjunto de 2020.

La Ley Núm. 161-2009, supra, sec. 9025, ordenó que se prepararara y adoptara un Reglamento Conjunto, el cual, estableciera la evaluación y expedición de permisos y recomendaciones de obras de construcción y usos de terrenos. En respuesta, se creó y aprobó el Reglamento 9233 del 2 de diciembre de 2020, conocido como el Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, en adelante, Reglamento Conjunto de 2020.

En lo pertinente a la controversia que examinamos, el Reglamento Conjunto de 2020 dispone en la Regla 3.7.1.1m que:

> m. Los usos autorizados en los Permisos Únicos que son emitidos al amparo de este Reglamento, se considerarán de naturaleza "*in rem*", por lo que dichos usos autorizados **mantendrán su vigencia en cuanto a su aplicabilidad para derechos adquiridos, aun cuando se realice una renovación tardía o fuera de término del Permiso Único**.
>
> 1. Esta vigencia de los usos estará sujeta al cumplimiento con el requisito establecido en la Sección 3.7.1.3, Inciso (c).
> 2. La solicitud del Permiso Único no alterará o modificará el permiso de uso vigente y previamente emitido, ni conllevará una nueva evaluación del uso ya autorizado, salvo que haya un cambio a dicho uso o en las actividades autorizadas bajo el permiso de uso previamente emitido
>
> (Énfasis nuestro).

Ahora bien, resulta importante señalar que, en el año 2023, nuestro Alto Foro declaró la nulidad del Reglamento en cuestión. Sin embargo, expuso que "[a] partir de la certificación de esta Opinión, *las nuevas solicitudes de permisos que se presenten en lo sucesivo* se evaluarán según los parámetros del Reglamento

Conjunto de Permisos para Obras de Construcción y Usos de Terrenos, Reglamento Núm. 7951 de 30 de noviembre de 2010. Esto será así hasta tanto la Junta de Planificación de Puerto Rico adopte un nuevo reglamento para estos fines, si así lo estima procedente dentro de sus facultades discrecionales". *Martínez Fernández et al. v. OGPE et al.*, 212 DPR 285, 291 (2023). (Énfasis suplido). La fecha de certificación aludida es el *16 de junio de 2023.*

## III.

Por estar relacionados entre sí, discutiremos los señalamientos de error planteados por Carrión Torres de forma conjunta. En su petitorio, Carrión Torres plantea que procedía que la solicitud de permiso único fuese denegada, archivada y se iniciará un nuevo trámite mediante el cual se solicitará un permiso de uso ministerial para la agencia hípica con una variación para el uso como cafetín. Añade, que el área donde se encuentra Los Palitos, es cercana a una iglesia que se encuentra en operación, por lo que, al momento de solicitar el permiso Castro Badia omitió elementos esenciales para poder evaluar y otorgar adecuadamente el mismo.

Por su parte, Castro Badia arguye que el *"Permiso Único"* aprobado no es revisable conforme a las disposiciones del Reglamento Conjunto de 2020.[21] Añade, que este había sido un permiso previamente aprobado, por lo que, constituía una renovación, y el uso mantenía su vigencia. De igual forma, la OGPe alega, en síntesis, que, por haber sido previamente autorizado, resulta innecesario dirimir las consideraciones planteadas por Carrión Torres sobre la clasificación en la que ubica el predio en el

---

[21] Aclaramos que la solicitud al amparo de este reglamento, en el caso de autos, se presentó en el mes de *enero de 2023*. Para esa fecha, el Tribunal Supremo de Puerto Rico aún no se había expresado en el caso de *Martínez Fernández et al. v. OGPE et al.*, supra, mediante el cual anuló el Reglamento Conjunto del 2020. Es por esto que, para los efectos del caso de epígrafe, consideraremos el reglamento en cuestión.

que opera el negocio Los Palitos. A estos últimos, *les asiste razón.* Veamos.

Surge del expediente ante nuestra consideración que, el *"Permiso Único"* solicitado por Castro Badia para Los Palitos, aquí en controversia, contiene el mismo uso aprobado en el *"Permiso Único"* anterior emitido en el año 2021. Surge, además, que dicho permiso fue debidamente aprobado. Siendo esto así, la expedición del nuevo permiso ***se trataba de una renovación*** y no de un nuevo permiso.

Según expusimos anteriormente, la Ley Núm. 161-2009 y el Reglamento Conjunto de 2020, establecen que si el uso aprobado no ha variado y no han transcurrido más de dos (2) años, no se requerirá la expedición de un nuevo permiso, ni la evaluación del uso, que ya había sido aprobado. Entonces, no procedía que la OGPe volviera a evaluar las condiciones del permiso aprobado, si no que, procediera a renovarlo, según lo hizo.

Coincidimos con la posición de la OGPe, quienes plantearon en su oposición al recurso de revisión ante nos, que el permiso expedido en el año 2021 al negocio Los Palitos fue válidamente expedido, y que el hecho de que la solicitud del nuevo permiso no indicara que se trataba de una renovación, no impedía que la agencia la evaluara como tal.

Finalmente, el recurrente plantea que la renovación del permiso tampoco procedía, ya que el mismo había sido archivado. *No le asiste razón.* En su apéndice, Carrión Torres adjuntó una copia de un portal electrónico, en donde aparece el permiso 2021-361939-PU-071219 archivado. Por ello, entiende que lo que debió solicitarse fue un permiso nuevo.

Sin embargo, durante una de las argumentaciones de la vista celebrada el 28 de marzo de 2023, la Lcda. Loyda Rosas, de la agencia recurrida, ofreció la siguiente explicación al respecto: "si

bien [sic] el sistema dice: 'archivado', existe un permiso válidamente expedido en el sistema con [sic] fecha del dos mil veintiuno (2021)".[22] Añadió que, aunque "no se haya incluido en el Memorial Explicativo que se trataba de una renovación, no impide que el técnico que está evaluando el caso en el OGPe verifique todos los [sic] documentos que existen en el *SBP* y en el *GIS* de la [sic] Junta de Planificación para verificar qué autorizaciones se han expedido para [sic] la propiedad".[23] Por ello, concluyó que el permiso expedido "se trata de una renovación y no de un permiso nuevo".[24]

Además, en su testimonio, el Ingeniero Camilo Almeyda explicó que un permiso expedido se puede archivar.[25] No obstante, con relación al permiso que nos ocupa, testificó que no sabía por qué aparecía archivado.[26] Por lo tanto, conforme al derecho anteriormente esbozado, un presunto error administrativo como este, no puede eliminar el derecho del recurrido a la renovación de su permiso, si la misma procedía en derecho.

Así las cosas, resulta forzoso concluir que **Carrión Torres falló en rebatir la presunción de corrección** que cobija las determinaciones finales de la OGPe. Luego de realizar nuestra función revisora, no encontramos que la decisión de la OGPe haya sido arbitraria, irrazonable o ilegal. Tampoco hallamos error en su interpretación o aplicación del derecho. Así, *nos corresponde confirmar la determinación de la OGPe.*

**IV.**

Por los fundamentos expuestos, se *confirma* el dictamen recurrido.

---

[22] Transcripción de la prueba oral, pág. 15.
[23] *Id*. págs. 15-16.
[24] *Id*. pág. 16.
[25] *Id*. pág. 29.
[26] *Id*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones